JOHN CONNOLLY, Appellee, *vs.* THE PEOPLE'S GAS LIGHT
AND COKE COMPANY, Appellant.

*Opinion filed October 28, 1913.*

1. MASTER AND SERVANT—*relation does not exist unless power to discharge exists.* The relation of master and servant does not exist unless the person sought to be held as the master has the control of the alleged servant, which involves the power to discharge, and hence the relation does not exist unless the power to discharge exists.

2. SAME—*what does not make an employee the servant of his employer's customer.* A servant sent to do work which his employer has agreed to perform for a customer does not become the servant of the customer merely by having the work pointed out to him and doing it.

3. SAME—*what provisions of a contract do not make customer the master of other party's teamsters.* Provisions in a contract between a gas company and a person who has agreed to do the company's hauling that the drivers furnished shall be satisfactory to the company and the teaming be done in accordance with the direction of the company's superintendent, are nothing more than an agreement that the work shall be satisfactorily done, and do not make the teamsters the servants of the company in doing the hauling.

4. SAME—*when teamster is not a volunteer under the direction of the party for whom the hauling is done.* A teamster sent by his employer to do hauling which the employer has agreed to do for a customer is not a volunteer, in the sense that the acceptance of his services by the customer renders him the servant of the customer the same as though working for hire.

5. SAME—*when gas company is not liable for injury caused by teamster.* Where a teamster sent by his employer to do hauling which the employer has agreed to do for a gas company, hauls a load of gas pipe to the place directed by the company, and, after unloading it in the street near the opening of a tunnel, stumbles and knocks a piece of gas pipe into the tunnel while on his way to attend to one of his horses, the gas company cannot be held liable for an injury inflicted by the falling pipe on a man working near the mouth of the tunnel.

6. SAME—*when question of relation of the parties is to be determined by terms of the contract.* Where a person has a written contract to do the hauling and teaming for a customer the rela-

tion in which the teamsters furnished by such person stand to the customer is to be determined from the terms of the written contract, and the construction of the contract is a matter of law for the court and not for the jury.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. M. MANGAN, Judge, presiding.

SEARS, MEAGHER & WHITNEY, ,(JAMES F. MEAGHER, and EDWIN HEDRICK, JR., of counsel,) for appellant.

B. J. WELLMAN, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is an appeal granted by the Appellate Court for the First District, in pursuance of a certificate of importance, from a judgment of that court affirming a judgment of the circuit court of Cook county in favor of John Connolly, appellee, against the People's Gas Light and Coke Company, appellant, for damages resulting from a gas pipe falling into a tunnel and striking appellee.

The suit was brought against the People's Gas Light and Coke Company and Leo Smith, and the statement of the Appellate Court that it was brought against that company and one Hartwell, and that the suit against Hartwell was dismissed, is a mistake. The suit was dismissed as to the defendant Leo Smith, but the declaration was not amended and still charged the two defendants jointly. There was a trial by jury and a verdict finding the remaining defendant guilty and assessing the plaintiff's damages at $2854. The defendant moved for a new trial and the plaintiff remitted the sum of $1854, which was practically two-thirds of the verdict, whereupon the motion for a new trial was denied and judgment was rendered for $1000.

There were two counts in the declaration, and in each it was alleged that the plaintiff was an employee of the Great Lakes Dredge and Dock Company and worked near the bottom of the mouth of the VanBuren street tunnel, in Chicago. The charge in the first count was, that the defendants negligently allowed and permitted an iron gas pipe to fall down into the tunnel, striking the plaintiff; and the second count alleged that the defendants negligently piled a great pile of iron gas pipe fifteen inches from the edge of the tunnel, and because of said negligence a piece thereof was caused to roll and fall off the edge and down into the tunnel and strike the plaintiff. At the close of the evidence the defendants moved the court to direct a verdict of not guilty, and the motion was denied.

There was no difference between the witnesses as to the facts except as to the precise distance of the gas pipe from the tunnel, and that was immaterial. The defendant gas light company was engaged, among other things, in putting in gas fixtures and gas stoves and ovens in buildings in Chicago. F. G. Hartwell did all the teaming and hauling for the defendant under a written contract running for five years, at certain fixed prices per month for double teams, single teams, horses and buggies, and reserve horses, respectively. The contract contained an agreement that the drivers of the teams should be satisfactory to the defendant; that the teaming should be done in accordance with the directions of such of defendant's superintendents as it might designate, and that the employees of Hartwell should be satisfactory to the superintendents and officers of the defendant at all times and in all respects. The defendant, for the purpose of putting in a gas stove in the building at 233 Market street, ordered some pieces of gas pipe hauled to that place. Leo Smith was one of Hartwell's drivers, and he was directed by the barn boss to go to the defendant's office or yards to do the hauling. Smith went with a horse and wagon in pursuance of that order and took on his

wagon a number of pieces of gas pipe. Charles Dawson was a gas-fitter employed by the defendant to do the work. He rode with Smith to the rear of the building at 233 Market street. Back of the building there was a paved alley twenty-five feet wide, and Smith drove into that alley at the south end, turned his horse around, facing south, and stopped the wagon four or five feet from the VanBuren street tunnel, near its east entrance, where it disappears beneath the surface of the ground. When Smith reached the place where the job was to be done, he took the pieces of pipe, eight or ten in number, from the wagon and laid them on the pavement between the wagon and an iron post supporting the railing along the edge of the tunnel. The evidence for the defendant was that the pipe was laid against the wheel of the wagon, several feet from the tunnel, and the declaration alleged that it was fifteen inches from the edge of the tunnel. One witness for the plaintiff testified that the pipe was lying against the iron post connected with the rail at the edge of the tunnel. Market street and the alley run north and south and VanBuren street runs east and west. The tunnel runs east and west across the alley. Whatever the distance, all the evidence showed that the pipe was laid between the wagon wheel and the iron post. There was a vise in the rear end of the wagon, used by the gas-fitter in preparing the pipe, and he went up-stairs in the building and made an examination and commenced cutting the pipe and cutting threads on it. When he would get one pipe cut and threaded he would go up-stairs and put it in, and Smith stood around watching him and waiting until that job was completed to go to some other place or to do some other hauling. While the horse and wagon were standing there the fly-net caught in the breeching and was tickling the horse, and he commenced to kick. Smith started toward the horse to fix the net before some damage was done, and in doing so he slipped and stumbled and fell. His foot struck a piece of the pipe three feet long and three-

quarters of an inch in diameter and kicked or knocked it over into the tunnel, where it fell on the plaintiff. Smith always unloaded the material, and he laid it on the pavement without any suggestion or direction from Dawson. There was evidence that the alley sloped from the iron post toward the center slightly and was three inches lower at the center than at the sides, although it appeared to one of the witnesses to be level. Dawson did not lay on the pavement the pipe that fell on the plaintiff.

The Appellate Court in the opinion filed took the view that Smith, in all that he did, was doing the work of Hartwell and was Hartwell's servant and not the servant of the defendant, and that conclusion was unquestionably right. It is true that a person who is in the general employment of one person may with his consent be transferred to another for some particular work, in such a way as to become the servant, for the time being, of the other in doing that work, but a servant who is sent to do work which his master has agreed to perform does not become the servant of the one for whom the work is performed by having the work pointed out to him. He is the master who has the choice, control and direction of the servant, and it was held in *Pioneer Fireproof Construction Co.* v. *Hansen,* 176 Ill. 100, that the right to control involves the power to discharge, and that the relation of master and servant will not exist unless the power to discharge exists. In *Harding* v. *St. Louis Stock Yards,* 242 Ill. 444, the statement that the relation of master and servant does not exist unless the power to discharge exists was repeated, and the court approved the decision in *Driscoll* v. *Towle,* 181 Mass. 416, where the conditions were practically the same as in this case, and where the driver had been hauling property for an electric lighting company and sometimes gave help outside of driving his wagon. There was no possible ground upon which Smith could be said to be the servant of the defendant in going to his horse to adjust the fly-net and prevent some damage

to his employer's property. Smith sometimes voluntarily helped the gas-fitters in doing their work, if he saw fit to do so; but he was under no obligation to do it, and he was not assisting Dawson at the time of the accident in any way, even if the work that Dawson was doing had contributed to the accident, which was not the fact. The provision of the contract with Hartwell that the driver should be satisfactory to the defendant and the teaming be done in accordance with the direction of the defendant's superintendents, was nothing more than the usual agreement that work or services shall be satisfactory to the person for whom the work is done or the services performed, and it did not make Hartwell's drivers the servants of defendant.

The opinion of the Appellate Court, however, was, that the fact that Smith was not the servant of defendant was not decisive against its liability; that it was responsible for what Smith did because it was its duty to exercise reasonable care to prevent a piece of gas pipe from falling into the tunnel, and that it failed in that duty because the pipe was so laid and in such a place that if anything struck the pipe a piece was liable to fall into the tunnel. If there was such a duty to see that Smith was not negligent in laying the pipe on the pavement there was no breach of the duty, since the evidence did not tend to prove any negligence in that respect. Whether the pavement sloped slightly toward the center or was level, it did not slope toward the tunnel, and the evidence did not tend in the slightest degree to prove that the pipe was liable to move or to roll or fall into the tunnel without the active interference of some agency. It is immaterial whether the pipe was near the iron post or near the wheel of the wagon, since it could not roll into the tunnel without being set in motion by some independent force. There is no reason for saying that the pipe would have moved if Smith had not slipped and fallen, and, as he said, accidentally kicked the pipe into the tunnel, and there was no possible connection between the defendant and the

act of going to the horse. The court erred in not directing a verdict, as requested.

The first instruction given at the instance of the plaintiff was as follows:

"If a person or corporation accepts the benefit of the services of a volunteer and directs and controls him in his work, said volunteer becomes a servant or employee of the same as if working under a contract for hire."

This instruction was abstract in form and had no relation to the facts of the case. Smith was not a volunteer in unloading the pipe, which the service of Hartwell required him to do, nor in looking after his horse to stop his kicking. The instruction would naturally mislead the jury to suppose that Smith was to be regarded as a volunteer directed and controlled by the defendant and thereby becoming its servant, which did not correspond with any evidence in the case. The seventh instruction left it to the jury to determine, from the evidence, whether Smith was the servant of the defendant or Hartwell. It stated that even though he was paid by Hartwell, yet if, at the time of the accident, he was doing work for the defendant and was subject to the direction and control of the defendant and not of Hartwell, the defendant, and not Hartwell, was his master while doing that work. The instruction was not only based on no evidence, but it violated the rule stated in *Pioneer Fireproof Construction Co.* v. *Hansen, supra,* that the relation in which Smith stood to the defendant was to be determined by the terms of the written contract with Hartwell, and its construction was a matter of law for the court and not for the jury.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*