(No. 23627.—

FRANCES THIEL, Appellee, *vs.* THE MATERIAL SERVICE CORPORATION, Appellant.

*Opinion filed October 27, 1936—Rehearing denied Dec. 4, 1936.*

MILLER, GORHAM, WALES & ADAMS, for appellant.

FINN & MILLER, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

The plaintiff, Frances Thiel, recovered a judgment in the superior court of Cook county against the Material Service Corporation for personal injuries sustained by reason of a collision between an automobile in which she was riding and a truck operated by one Stine. The collision occurred on August 16, 1930. In addition to the Material Service Corporation, the second amended declaration made H. C. Bollman, John Beiderer, the Checker Taxicab Company and Agnes Strieder parties defendant. The Checker Taxicab Company was dismissed out of the case by stipulation. A non-suit was taken as to Agnes Strieder. A verdict of not guilty was returned by the jury as to Bollman and Beiderer. The judgment against the Material Service Corporation was affirmed on appeal to the Appellate Court for the First District. This court granted the petition of the defendant for leave to appeal, and the record is submitted for further review.

The plaintiff contends that Stine was the servant and agent of the defendant, the Material Service Corporation. This the defendant denies. The question of the negligence of Stine and the manner of his operation of the truck is not here involved. It is admitted that there was evidence of negligence sufficient to require a submission of that question to the jury. The defendant's position as stated in its petition for leave to appeal is as follows: "It seems to us clear that Stine was Beiderer's servant, and that Beiderer was operating the truck as a sub-contractor under Bollman's independent contract." Upon oral argument, however, the defendant presented the proposition that even though Beiderer was not a sub-contractor under Bollman, he was, nevertheless, the owner of the truck and that Stine was his employee. It is urged that in either event the Material Service Corporation, as a matter of law, could not be held responsible for the negligence of Stine and that the judgment should therefore be reversed. To sustain its po-

sition the defendant relies upon *Connolly* v. *People's Gas Light Co.* 260 Ill. 162, and *Foster* v. *Wadsworth-Howland Co.* 168 id. 514. This leads us to a consideration of the facts as shown by the evidence.

The Material Service Corporation is a corporation engaged in the purchase and sale of building material in Chicago. In the operation of its business it maintains yards situated in different parts of the city and purchases stone and gravel from quarries in and around Chicago, which it hauls by means of trucks to its yards or to other places designated. It had a contract with Bollman under which Bollman was assumed to have the exclusive right to do this hauling and for which he was to be paid at certain rates based upon the mileage from a certain quarry as measured by a straight line, regardless of detours. This contract provided that Bollman was to own and operate not less than fifteen trucks and that he would furnish all additional trucks necessary, up to the number of thirty. Bollman was to be paid at a stipulated rate, whether such cartage should be performed by trucks owned by him or by sub-contractors hired to do such work. The contract also provided that Bollman should carry public liability insurance in the operation of the trucks as well as compensation insurance and property damage insurance. Stine was a truck driver who had hauled material from the different yards on one or two occasions prior to the Bollman contract. Some time in June, 1930, Stine, then unemployed, called at the shipping office of the defendant to see if he could get a job driving a truck. According to Stine's testimony he was told by one Buck that he, Stine, could get work provided he could obtain a truck and secure Bollman's consent. Buck was at that time a shipping clerk for the Material Service Corporation. Stine then went to Frank Beiderer and obtained the use of his truck and hauled some dirt under the direction of one "Heine," another shipping clerk employed by the defendant. This truck, however, suffered

an accident, and Stine then went to see John Beiderer, who owned two or three trucks, and asked him if he could get one of his trucks to use in hauling material. He was permitted to use John Beiderer's truck, and from that time until the happening of the accident he hauled material under the direction of the Material Service Corporation. The defendant's shipping clerk would tell him what kind of stone to haul and where to deliver it, and would give him a delivery ticket, which he would return to the shipping clerk. When he, Stine, was away he had a cousin haul for him. At the direction of the defendant he placed a sign on the side of the truck owned by Beiderer which bore the legend "Material Service Corporation." Stine further testified that for two or three weeks at a time Beiderer did not know what witness was doing with the truck or where he was nor did he tell him where to go or what work to do, and that he, Stine, took care of the truck. There was a small sign on the side of the truck bearing the name "John Beiderer." He was never told by Beiderer where to report nor did the latter undertake to direct him in his work. He sometimes carried the delivery tickets around until he had a number of them in his possession and would then turn them over to Buck at the Material Service Corporation, requesting him to bill them for John Beiderer. The delivery tickets signed by the drivers for Bollman were left directly at Bollman's office, and separate bills were rendered by Bollman for the trucks he owned and for each of the other drivers of trucks used by him.

From the evidence it further appears that Beiderer was paid at the same rate for the hauling by Stine as was Bollman, but that Bollman received a three per cent commission and issued his check to Beiderer for the balance, out of which Beiderer paid Stine at the rate of $7.50 a day, which was the regular union wage for truck drivers. This, however, was not a uniform practice, as it developed upon the cross-examination of the book-keeper for the Material Ser-

vice Corporation that in some instances checks for the work done by Stine were sent directly to John Beiderer and not to Bollman. Bollman testified that he did not know that Stine was hauling material for the defendant, until one day, on going to the office of the defendant, he found the name of Beiderer on one of the cartage tickets; he testified that he talked to Buck about it and asked him why this truck was working and how Stine happened to be hauling material and asked Buck to discontinue the use of this truck. He was told that the foreman of the Hansen Construction Company insisted on Stine doing the hauling. It appears that the Material Service Corporation at this time had a contract with the Hansen Construction Company and its foreman insisted that Stine do the hauling for the defendant on this job. Bollman further testified that he asked them to get rid of Stine ·as soon as possible; that at no time did he have anything to do with the direction of Stine's work; that he did not know what he was doing or where he was hauling, and that he did not pay him or have any control over him. None of the hauling done by Stine was billed through his office and he never heard of John Beiderer, the owner of the truck, nor did he ever see him or have any dealings with him except as the checks came through his office and were re-delivered to Beiderer.

Beiderer testified that Stine came to see him and said he had a job for his truck and was going to put it to work; that he never at any time had any conversation with anyone connected with the Material Service Corporation, and that the first he knew of the connection between Stine and the Material Service Corporation was when he went there to see where his truck was working; that he never told Stine anything about what to haul or where to haul the material and sometimes would not see him for over a week; that he himself did not pay him, but when he got his checks he would pay him out of the proceeds at the rate of $7.50 per day. He paid for the gas, oil and repairs on the truck,

and did not know about the Material Service Corporation's sign on the truck until he saw it there but did not direct that it be placed on the truck. Beiderer added that he did not go to the Material Service Corporation to seek employment for the truck; that he never told Stine where to pick up a load; that he did not, in fact, know where he was going or what he was doing, but only that his truck was being used by the latter and that he was receiving the balance on certain checks after Stine was paid his per diem consideration; that he did not make any arrangement with Stine, however, as to how much he was to receive.

From these facts the position of the defendant that Stine was Beiderer's servant and that Beiderer was operating the truck as a sub-contractor under Bollman is not well taken. Bollman had no contractual relationship with Beiderer or with Stine, and, in fact, did not know of the operation of his truck until some time after it had been put to work. As soon as he learned of it he refused to be bound by any such agreement and expressly requested that Stine be discharged. He had nothing to do with the management or direction of Stine or the truck and did not carry Stine on his list of employees covered by liability insurance, nor could he have been expected so to do. There was ample evidence on which the jury could have based its finding that there was no contractual relationship between Bollman and Stine or Bollman and Beiderer.

The question of the circumstances in relation to the arrangement, if any, between Beiderer and the defendant remains. One or two rather significant facts are apparent from the record. In the first place, Beiderer never talked with the Material Service Corporation, nor did he have any contract or agreement with the corporation unless such arrangement could be implied from the surrounding circumstances. From the evidence it appears that the Material Service Corporation or its agents were interested in Stine and not in Beiderer. There seems to have been a desire

to furnish Stine with work, and when he called at the office of the defendant's shipping clerk he was informed that he could get a job driving a truck if he obtained one usable for the purpose. As already shown by the evidence, Bollman asked that Stine be discharged. It is significant to observe in this connection that Buck did not refer Bollman to Beiderer for the purpose of obtaining the discharge of Stine, but, instead, stated that he was retained at the request of the foreman of the Hansen Construction Company. This tends to indicate that the employment of Stine was a matter of importance to the defendant and that it was not particularly concerned about Beiderer. The fact that when an accident happened to the truck of Frank Beiderer, Stine succeeded in obtaining the use of the truck belonging to John Beiderer, a brother of Frank, in order to continue his service with the defendant, is indicative of the intention that so long as Stine procured a truck to carry on it was immaterial to the defendant whose truck it was that he used. The statement that Beiderer could have discharged Stine at any time is hardly consistent with the facts, as it would appear that all that Beiderer could do would have been to deny the use of his truck, in which event Stine might have been able to continue in the event he could obtain another truck. That Beiderer could have continued his relationship with the defendant by procuring another driver is doubtful. It is apparent that Beiderer knew nothing of what Stine and the truck were doing but that all his movements were directed from the office of the Material Service Corporation. The situation as it develops from the facts is unusual.

*Connolly* v. *People's Gas Light Co. supra,* and *Foster* v. *Wadsworth-Howland Co. supra,* cited by the defendant, are not controlling. An examination of those cases shows that the arrangements were between the corporation and the contractor and not between the corporation defendant and the servant. The question as to whether or not the relationship of master and servant exists is dependent upon

certain facts and circumstances. These facts include the question of hiring, the question of the right to discharge, the manner of direction of the servant, the right to terminate the relationship, and the character of the supervision of the work done. (*VanWatermeullen* v. *Industrial Com.* 343 Ill. 73; *Shannon* v. *Nightingale,* 321 id. 168.) Unless these facts clearly appear the relationship cannot become a question purely of law. The fact that Stine received $7.50 per day out of the checks received by Beiderer is not controlling. Under the facts in this case it may well be contended that such a wage was not, in fact, given to him as a servant but merely disclosed an arrangement between Stine and Beiderer with respect to the manner of pro-rating the proceeds from the work. Even though it may have been called a wage, nevertheless, in view of all the attendant circumstances, it still has to be considered with all the other facts and circumstances in the case. Certainly, it is clear that the movements of Stine throughout his employment were directed solely and entirely by the Material Service Corporation. The jury by its verdict, together with the judgment of the trial court and its affirmance by the Appellate Court, settled the question of fact. This court cannot say, as a matter of law, in view of all the facts and circumstances in the case, that the judgment in favor of the plaintiff and against the defendant is erroneous.

Certain inferences are drawn by counsel for the plaintiff from the facts for the purpose of showing some ulterior motive in retaining Stine. It is argued that it was impossible for the large number of deliveries to be made according to the tickets turned in by Stine and that thereby somebody was profiting. Under the circumstances in this case we deem it unnecessary to give much weight to these inferences as presented.

It is urged as ground for reversal that the trial court erred in instructing the jury as to the law relating to master and servant and independent contractors. We have exam-

ined the record with reference to the instructions of the court and are unable to find any specific objection advanced by counsel for the defendant. There appears to have been some discussion as to what should be contained in the general instructions but no specific objection to any part of the instructions given. Section 67 of the Civil Practice act had not been amended at the time of the trial. It then required that specific objections to instructions be made before the jury retired in order to preserve the point for consideration by a court of review. Our examination of the record fails to disclose any objection made or exception taken to the giving of the instructions which the appellant now assails. It cannot, therefore, urge that the giving of the instructions was erroneous, as no question of their propriety is preserved for review. *People* v. *D'Andrea,* 361 Ill. 526; *People* v. *Schneider,* 360 id. 43.

For the reasons stated in this opinion the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*