66 P.(2d) 426

### MENDOZA v. GALLUP SOUTHWESTERN COAL CO.

No. 4239.

Supreme Court of New Mexico.
Jan. 26, 1937.

On Rehearing April 6, 1937.

Wheaton Augur, of Santa Fe, and Hugh B. Woodward, of Albuquerque, for appellant.

Herbert C. Denny and H. S. Glascock, both of Gallup, and J. O. Seth, of Santa Fe, for appellee.

BRICE, Justice.

This is a proceeding to recover under the Employer's Liability Act (Comp.St.1929, § 156-101 et seq.) for personal injuries. The parties will be styled plaintiff and defendant, as they appeared below.

The fact that plaintiff was injured in the course of his employment is admitted. The amount of compensation alone is questioned. Compensation is based on the average weekly earnings. A determination of this basic fact is the only question in the case. The plaintiff claims his average weekly earnings were $23.26, whereas the defendant claims they were $4.47. The plaintiff alone testified for himself. At the conclusion of his testimony the defendant's counsel stated: "At this time we ask for judgment in accordance with the prayer of defendant's answer," which was as follows:

"Wherefore, defendant prays that the court fix and determine the amount of compensation which the plaintiff is entitled to receive from the defendant under the terms and provisions of said workman's compensation act of the State of New Mexico and for all such other and further relief as to the court may seem meet and proper."

The court stated:

"The plaintiff's objection to the evidence made earlier in the case will be overruled; the motion of the defendant at the close of the case will be sustained."

Thereupon the court found as facts among other findings:

"2. That at the time of said accident, plaintiff's average earnings as made and defined by said Workman's Compensation Act, were Four & 47/100 ($4.47) Dollars.

"3. That the plaintiff has suffered total loss of earnings on account of said accident, from the date thereof and until the date hereof."

The defendant admitted its liability based upon $4.47 average weekly earnings, and further stated in its answer:

"That the defendant has been and is now ready and willing to pay to the plaintiff, all sums of money which the defendant is obligated to pay to and for the account of the plaintiff under the terms and provisions of said Workman's Compensation Act, on account of said accident."

The motion of defendant at the close of the testimony did not call for a declaration of law as to whether plaintiff was entitled to recover; but admitted liability, and requested the court to determine the amount from plaintiff's testimony and a tabulation of earnings introduced by agreement. Therefore, if there is substantial evidence to support the judgment, the decision of the district court must be affirmed; otherwise reversed.

With this rule in view, the question is whether there is substantial evidence to support the court's finding that plaintiff's average weekly earnings were $4.47. The testimony is substantially as follows:

Plaintiff became an employee of defendant as a coal miner on October 28, 1932,

and he was injured October 3, 1933. His average weekly earnings for the whole time were $4.47. It would appear from the above and from the items of monthly payments, introduced by agreement, which varied from $6.47 to $48.74 per month, that the mine was not operated continuously, as plaintiff worked every day the mine was operated. On August 28, 1933, the employees of the mine struck for higher wages and "everybody walked out," including the plaintiff. A few weeks after the walkout, the miners went back to work and plaintiff worked until the 3d day of October, 1933, on which date he was injured. Plaintiff returned to his old employment just as though nothing had happened. Defendant was paying 68 cents a ton for mining coal before the strike and 5 cents more after the strike. There was no special agreement between plaintiff and defendant when plaintiff returned to work; "just went in with the rest of the men as though he had never quit." He worked six and a half days after the return to work and earned $23.26 to the date of his injury.

Plaintiff contends that the strike terminated his employment; that when he returned to work it was a new employment; that as he worked under such new employment for a full week the statute implies such week's earnings are the basis for measuring defendant's liability. The defendant contends that the "walkout" did not terminate the employment; that even if it did, the plaintiff's average earnings should be calculated upon the basis of the previous year's earnings. Provision is made to determine such average weekly earnings, as follows:

"Whenever in this act the term 'earnings' is used it shall be construed to mean the average weekly earnings of the workman at or immediately prior to the date of the injury. Such average weekly earnings shall be computed by dividing the total earnings of such workman during the period not exceeding one year during which he has been employed in the same capacity by such employer by the number of weeks in such period. However, if the injured workman shall have worked less than one week at the employment in which he was injured his earnings shall be determined by the average weekly earnings of other workmen engaged in like employment in the same locality during the preceding four weeks; Provided, that in case such earnings have been unusually large on account of the employer's necessity temporarily requiring him to pay extraordinary high wages such average weekly earnings shall be based upon the usual earnings in the same community for labor of the kind the workman was performing at the time of the injury. In any event the weekly compensation allowed shall not exceed the maximum nor be less than the minimum provided in section 17 (156-117) hereof." Subsection (m) of section 156-112, N.M. Sts.1929.

This statute was construed in Stevens v. Black, Sivalls & Bryson, Inc. et al., 39 N.M. 124, 42 P.(2d) 189, in which it was

held that the injured employee having worked for over a year immediately prior to his injury, that his average weekly earnings should be determined by dividing his total earnings for the year next preceding his injury by fifty-two, notwithstanding his employment was intermittent. This would be an exact case except for the intervening strike.

To entitle an employee to compensation under this statute, he must be one who is earning money, at or immediately prior to the time of his injury, from an employer as defined by the statute. The basis of compensation is the average weekly earnings of the workman, computed by dividing the total earnings of the workman during the period of not exceeding one year, during which the relation of employer and employee continuously existed and during which the employee worked in the same capacity (though it may have been intermittently), by the number of weeks in such period; provided he has worked for as long as a week. The period must be continuous, for it would not be immediately prior to the date of the injury if the relation of employer and employee had ceased between the original employment and the injury. If there is a break in the employment, then earnings for the time prior to the break cannot be taken into consideration. The question in this case is whether plaintiff's employment ceased at the time of the strike.

Our decision depends on whether the strike terminated the relation of employer and employee. Ordinarily, the purpose of the strikers on a "walkout" is to secure higher wages, or shorter hours, or other like advantage, and force the employer thereby to return them to their employment with this advantage. On the other hand, the employer does not always —nor even usually—accept the "walkout" as a complete termination of all relations between the parties. There is usually a time in which the parties confer and bargain. The workmen during such time hope to resume their employment with increased wages or other advantage, and the employer to retain his experienced workmen. But there is a suspension of the relations of employer and employee. No wages are earned by the employee and the employer is liable for none, and the striker is not subject to the orders of his former employer because of his refusal to work. When the employer loses the authority, for whatever cause, to direct the employee in the labor for which he was employed and the employee ceases to earn wages because of his refusing to perform labor at hand, which, under his employment it was his duty to perform, the relation of employer and employee necessarily ends. This is particularly so under our Workman's Compensation Act because compensation for injuries is based upon the earnings of the employees immediately preceding such injury.

The words "employer and employee" as used in the New Mexico Workman's Compensation Act are used in their natural sense and intended to describe the

conventional relation between an employer who pays wages to an employee for his labor. Hull, Adm'x v. Philadelphia & Reading Ry. Co., 252 U.S. 475, 40 S.Ct. 358, 64 L.Ed. 670.

One of the tests of the relation of employer and employee is that the employer retains the right to direct the manner in which his business shall be done and the result to be accomplished. 39 C.J. p. 35, § 4, Title "Master & Servant," and 71 C.J., Title "Workman's Compensation Acts," p. 416, § 159.

We find but one case on the exact question, by a court in this country. We quote from Brown v. Central West Coal Co. et al., 200 Mich. 174, 166 N.W. 850, 851, as follows:

"When the decedent, a locomotive crane operator, left the employ of the coal company on the occasion of a strike, June 21st, the relations of master and servant, of employer and employee, were at an end. It required a new contract, a new employment, to restore such relations. When he entered the service of the coal company as a mechanic on August 24th, it was under a new contract, a new employment, in a different capacity, at a different wage. It was in this new capacity, this new employment, that he was working when he met his death. He had not worked in this employment 'during substantially the whole of the year immediately preceding his injury.' In fact, he had so worked but a short time. It is clear, therefore, that the decedent belonged to the second class mentioned in the Andrejwski Case, and that compensation should be computed upon the basis of his average daily wage during the days when he was so employed." The court in Jones v. The Ocean Coal Co., [1899] 2 Queen's Bench 124, seems to have arrived at the same conclusion.

In Stevens v. Black et al, supra, it was decided that employment may be intermittent (as in coal mines where they are open only part of the time for work) and the employment still be continuous; but in that case the contract continued in force. The parties understood that the mine could not be worked on full time, and employees worked when called upon.

Some courts hold that a strike terminates the relation of employer and employee under any circumstances. The No. C-4 (D. C.) 300 F. 757; Sarah Roehrig v. Missouri State Life Ins. Co., 251 Ill.App. 434; Geismer v. Lake Shore, etc., Co., 102 N.Y. 563, 7 N.E. 828, 55 Am.Rep. 837. Others, that the result may depend upon statutes or the contract between the parties. Greenfield v. Central Labor Council et al., 104 Or. 236, 192 P. 783, modified opinion in 207 P. 168; Price v. Guest (Eng. House of Lords) [1918] A.C. 760; Duplex Printing Press Co. v. Deering et al. (C.C. A.) 252 F. 722.

But in the absence of statute or contract regulating the relation during a strike, when an employee joins other workmen in a strike he ceases at that time to be an employee. He is no longer under the direction and control of his employer

in relation to the work he was employed to do, and no longer earns money as an employee, because of his refusal to work. If he returns to work, it is a new employment, although he returns to the same character of work. His earnings for the time he worked "at and immediately prior to his injury," if as much as six days (which is a working week), under the New Mexico Workman's Compensation Act is the basis upon which his average weekly earnings are to be calculated. This does not go back of the time work is resumed after a strike.

It follows that the district court erred in considering the earnings of plaintiff for the time he was employed before the strike, as a basis for compensation.

The case is reversed and remanded with instructions to enter judgment for plaintiff consistent herewith.

It is so ordered.

HUDSPETH, C. J., and SADLER, BICKLEY, AND ZINN, JJ., concur.

On Rehearing.

PER CURIAM.

It having been made to appear to the court that, since the entry of an order herein granting a rehearing, the parties have filed herein a written stipulation signed by their attorneys settling all matters in controversy between them, thus rendering moot the questions presented upon rehearing, the order granting rehearing will be set aside and the motion for rehearing denied without consideration of its merits. And in view of the wishes of the parties, as reflected by said written stipulation, that the cause be remanded to the district court of McKinley county with authority in said court to render judgment, subject to its approval, effectuating the agreement reached by the parties, the order of remand heretofore entered on this appeal will be modified to the extent of authorizing said district court so to act in the premises.

It is so ordered.

HUDSPETH, C. J., and SADLER, BICKLEY, BRICE, and ZINN, JJ., concur.