**FURTON et al. v. CITY OF MENASHA.**

No. 8635.

Circuit Court of Appeals, Seventh Circuit.

June 21, 1945.

Rehearing Denied July 17, 1945.

Jacob Kaiman and William B. Rubin, both of Milwaukee, Wis., for appellants.

Melvin Crowley, of Menasha, Wis., and Harvey C. Hartwig, of Milwaukee, Wis., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

Plaintiffs, a Michigan firm of contractors, built (or partially built) a "pre-settling basin" (a water reservoir) for the defendant, which was to be used as a part of its waterworks system. Out of its construction, disputes arose which resulted in this litigation. By this action plaintiffs seek to recover $100,994.71 for alleged extra and additional services rendered and expenses incurred under circumstances which plaintiffs assert made defendant liable therefor. The damages were traceable, for the most part, to alleged misrepresentations in the specifications submitted by the defendant and upon which plaintiffs assert they made their bid. They were in reference to the depth at which bed rock (to which excavations were to be made, and of which the contractors expected to make use) was to be found.

The court held the first complaint filed by plaintiffs failed to state a cause of action. An amended complaint was filed, which set forth verbatim the contract and the specifications upon which the contract was entered. The specifications and drawings were in fact made a part of the contract. Also made a part of the record were the instructions to bidders. A motion to dismiss the amended complaint was denied after the court had filed its opinion. The defendant then filed its answer and supported it by affidavits of the engineers who personally supervised and directed the construction. Plaintiffs, in turn, filed counter-affidavits. Attached were drawings of the plan for the construction of the basin.

On the pleadings and affidavits defendant moved for a summary judgment which was granted. This appeal followed.

Broadly speaking, plaintiffs base their claim on a misrepresentation appearing in the specifications, which they allegedly relied on, when they submitted their bid. This error in the specifications lay in the statement of the depth at which bed rock would be found. As a matter of fact, bed rock was not found at the depth stated on the map, or in the specifications. At some places plaintiffs stated, "There was no bed

rock at or near the elevation specified in the contract as represented by defendant." The plaintiffs claim they made their cost estimate for the work on the assumption that with bed rock at the high level stated in the specifications, they could easily excavate to the proper depth because their equipment would have a solid foundation on said bed rock. As the condition actually turned out, they had no foundation for their equipment. Plaintiffs were compelled to get different and heavier equipment and to make special bases for its operation; all of which required additional cost and expense. Plaintiffs also assert that the defendant's engineer ordered this additional work when the error in the specifications as to the location of bed rock was discovered. In brief, this is the basis of the plaintiffs' claim.

█ On this motion for summary judgment we must accept the allegations of complaint as true.

Defendant's position is likewise simple.

It contends: (a) The elevation of bed rock underlying the area to be excavated was uncertain and so known to plaintiffs, and indications in specifications and plan were approximations only; (b) there was no actionable representation as to conditions to be encountered in the performance of the work; (c) plaintiffs were lacking in diligence in the performance of the contract and resultant non-completion thereof; (d) failure to pay a large amount of mechanic lien claims justified defendant's declaration of default; (e) there being no genuine issue as to any material fact and no warranty being established, the summary judgment was properly entered dismissing the complaint.

We quote herewith from the contract.[1]

There is controversy as to the completeness of the work. Plaintiffs allege they substantially completed the entire work, although they admit they failed to pay the bills for material and labor, which was a part of their performance. Their excuse

[1] "The Contractor shall * * * finish * * * *excavation of the proposed area to rock*, the construction of * * * masonry walls, etc., * * * settling basin to the water purification plant, * * * all in accordance with plans and specifications hereto attached, identified by the parties hereto or as herein described.

"For all extra work of every description, that may be ordered, * * * the Contractor shall receive actual cost * * * plus * * * 15% * * * profit.

" * * * *

"The Contractor and the Commission agree that the Specifications and Drawings, together with this Agreement, form the Contract and that they are as fully a part of the Contract as if hereto attached or herein repeated.

" * * * *

"Specifications.

" * * * *

"*Contractors submitting bids or tenders on this work are expected to compare the plans and specifications with the site.* Drawing No. 9605 accompanies these specifications.

" * * * *

"(13) Extra Work, Additions, Deductions or Alterations:

" * * * * nor shall any work in the nature of extra or additional work * * * be performed without the express order of the Engineer; * * * the Engineer shall have full power * * * (to order extra work) * * * and to order and direct any such increase, diminution, altera-

tion or extra work to be made or performed, * * * and the Contractor shall in pursuance of such order and directions as he may receive *in writing* from the said Engineer, execute the work thereby ordered and directed; and the difference in expense occasioned by such increase. * * shall be added to * * * * the amount payable * * *. But, if any extra, additional or different work be proceeded with or executed by the Contractor without previous orders given in writing under the hand of said Engineer, as hereinbefore referred to, no charge for the same will be allowed.

"The Contractor further agrees that he shall have no claim for compensation for extra work, unless the same is previously ordered in writing by said Engineer, * * *.

" * * * *

"(24) Contractor shall excavate the settling basin area *to rock, which is at elevation 87.2* or approximately seven feet below the crest of the Menasha Dam."

The "Instructions to Bidders" contained this provision:

"Bidders must satisfy themselves, by personal examination of location of the proposed work, and by such other means as they may prefer, as to the actual conditions and requirements of the work, and shall not at any time after submission of a bid dispute, complain, or assert that there was any misunderstanding in regard to the nature or amount of work to be done."

was that defendant failed to pay them what was due on their contract.

Likewise, the time for completion of the work is in dispute. Defendant contends that the contract called for completion of the work on June 30, 1942; that time was the essence of the contract; that work was not completed by February 1, 1943. Plaintiffs charge the delay and expense to the fact that there was no bed rock as represented by defendant. Delay on that account was unavoidable and excusable.

The settling basin in question was approximately seven feet in depth, and on one side was 725 feet long, and on the other three sides, for a length of approximately 1900 feet, it was bounded by a body of water, an outlet creek of the Fox River and a dredged channel.

The blue print plan (a part of the specifications ("9605") was a drawing of the "Plan of the Settling Basin." It contained several sectional drawings. That of the "Dike" showed it resting on rock and had the word "Rock 87.2±"; that of the "baffle walls" had them resting on rock stating "Rock. El. 87.16±"; another wall resting on rock at an "El. 87.2±"; the drawing of the "Head House" shows it resting on rock at "87.2±"; the drawing of the "Piers Under Pipes" is shown resting on rock but no rock elevation is specified.[2]

██ Our final conclusion is that on the pleadings and affidavits before the court, it was error to dispose of the action by summary judgment. In reaching this determination, we are guided by the rule that a court must accept plaintiffs' fact allegations and statements in their affidavits and only on the assumption of their verity, yet insufficient, may summary judgment be entered against them. Moore's Federal Practice, p. 3184; Sartor v. Arkansas Nat. Gas, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967; Friedman v. Washburn Co., 7 Cir., 145 F.2d 715;

Campana Corporation v. Harrison, 7 Cir., 135 F.2d 334.

██ While there are persuasive facts set up in defendant's answer and in its affidavits which would justify dismissal, were it not for the counter facts set forth by plaintiffs, a court may not, on a motion for summary judgment, accept or weigh the facts which are controverted. So limiting our study of the facts, we are not justified in holding the bed rock representations in the drawings were not warranties upon which plaintiffs could and did rely in entering into the contract.

The controverted issue as to the character of these statements must await the ultimate finding of the District Judge (or of the jury if a jury trial be had) and only after all material evidence thereon has been presented. Likewise, plaintiffs' failure to make the payments necessary for the completion of the contract, so a court or jury might find, was excused by defendant's failure to make all payments due the plaintiffs or by the added cost and trouble traceable to the rock bottom representations. Other factual questions raised by the defendant (such as lack of written order by the engineer for the additional work and expense, or a waiver by the parties of such written order) will have to be determined upon all the evidence, in view of the controversy over the nature and character of the rock bottom representations.

We think the better course is to determine the factual issues first, in the light of all the evidence, and after such determination, pass upon the character and consequences of the alleged misrepresentations as to the bed rock, as well as plaintiffs' other alleged failures to meet the conditions and terms of the contract.

The judgment is reversed with directions to proceed in accordance with the views here expressed.

---

[2] The contract price for the completed work was $78,000 of which $19,980.20 was estimated cost of excavation. Plaintiffs aver their actual costs were $120,974.91, leaving uncompensated $100,994.71.