SAFEWAY STORES, Incorporated,
Appellant,

v.

Herbert WILCOX, Appellee.

No. 5011.

United States Court of Appeals,
Tenth Circuit.

March 10, 1955.

John B. Tittmann (of Keleher & McLeod and John B. Tittmann), Albuquerque, New Mexico, for appellant.

Joseph A. Sommer (of McKenna & Sommer), Santa Fe, New Mexico, for appellee.

Before BRATTON, MURRAH and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

Safeway Stores, Inc., brought this action to recover $29,000 which it had paid to Herbert Wilcox, the defendant, as the balance of an amount agreed to be paid

when the employment of Wilcox by Safeway was terminated. The defendant filed a motion for summary judgment, which was supported by the defendant's affidavit and correspondence between the parties relating to the severance. There was also attached to the affidavit a copy of a document prepared by Safeway captioned, "Herbert Wilcox-Severance Settlement". Safeway filed affidavits in opposition to the motion. The trial court sustained the motion and entered a summary judgment for the defendant.

The complaint alleges that prior to February, 1953, the defendant had been employed by Safeway as manager of its New York Division at an annual salary in excess of $40,000; that because of this employment the relationship between the parties was of a fiduciary nature; that in February, 1953, Safeway relieved the defendant of his duties as manager of the New York Division and agreed to pay him a severance gratuity of $60,000 and to retain defendant in its employ until May 1, 1954; and that in the spring of 1954, Safeway received information that the defendant was engaged in competition with it in violation of his fiduciary duties and obligations, and as a consequence thereof his employment was terminated as of March 25, 1954.

It was alleged that the severance arrangement provided that the $60,000 should be paid in five equal annual installments of $12,000 each; that in June of 1953, the defendant requested that the payment be made in two installments of $30,000 each, the first in June, 1953, and the second, in January, 1954; and that pursuant to this request $30,000 was paid in June of 1953, and $29,000 on January 8, 1954. It was alleged that the $29,000 payment was made at a time when Safeway did not know that the defendant had purchased a number of grocery stores in the cities of Albuquerque and Santa Fe, New Mexico, and was engaged in competition with Safeway and that such payment was made without its knowledge of defendant's competing activities and on the assumption of and belief in the defendant's continuing loyalty as an employee. It was alleged that the defendant's active competition was a violation of his fiduciary duties owing Safeway, and that its payment of the $29,000 was made under the mistaken belief that the defendant would observe these fiduciary obligations and not compete with Safeway.

Defendant's affidavit, which is uncontradicted, relates that the defendant was employed by Safeway, or predecessor companies, from August 11, 1931, until 1953; that Safeway knew that all of defendant's business life had been in the grocery business; and that he was first informed of the termination of his services with Safeway and requested to resign in a letter dated January 28, 1953, from Safeway's president. Aside from personal matters, the letter advised the defendant that a new man would take over his duties on February 1, 1953, and that it would be left to the defendant as to how the announcement would be made. The letter stated that at a later time a proper settlement would be arranged and that it would be liberal "in compensation and expense allowance". The letter stated that no other job with the company was suggested and that the president believed "that your interests and those of the Company will best be served by a separation".

On February 12, 1953, the president wrote the defendant that he would be kept on the administrative office payroll until February 28, 1953, at his then present salary and that following March 1, 1953, Safeway would pay the defendant additional compensation totaling $60,000 spread over whatever period and paid in such installments as the defendant desired. He suggested that the installments be paid over a period of at least five years. He explained the defendant would have a vested right in the Employee Retirement Plan if he continued as an employee until April 22, 1954, and that he probably would want to continue as an employee until then. The defendant answered, accepted the proposal, and stated that he desired to protect any vested rights in the Employee Retirement Plan.

On February 24, 1953, the president sent the defendant a written memorandum which set forth the details of the severance settlement, and stated that assistance would be given him regarding the retirement plan. This instrument provided that the defendant would continue on the administrative office payroll in an "employee status until May 1, 1954". It provided for compensation payments totaling $6,666.67. It also provided that "Safeway will make the compensation payments in the amounts and on the dates listed below." These payments, before employee deductions for the retirement plan, were to be made annually in the amount of $12,000 beginning in January, 1954, and continuing through 1958. It stated that the $60,000 should be treated as compensation for the purposes of the Employee Retirement Plan in the year 1954, and set forth the defendant's rights in this plan. When the retirement rights attached, defendant's employment status was to terminate. It was provided that the defendant would participate in the profit sharing trust only for 1952. The defendant was to execute a waiver of further interest in that plan, which he later signed.

On May 30, 1953, the defendant wrote the president stating that he would like to present a plan to him to solve the New York Division problem, and offered his services. In the letter the defendant stated that he had three business propositions, including one in Albuquerque, New Mexico, which looked very good to him but "before deciding upon any one of these propositions, I felt it advisable to write to you." This letter was answered for the president and the defendant's offer was politely rejected. The letter concluded by wishing the defendant success in whatever activity he might undertake in the future. On November 24, 1953, the vice-president of Safeway wrote to the defendant and stated that information had been received indicating that the defendant planned to enter the retail grocery business in New Mexico and Texas. The defendant was cautioned that any such venture would result in a forfeiture of his pension rights, and the letter quoted from the provisions of the retirement plan to that effect. The defendant answered this letter, stating that it came as a surprise to him, as no restrictions on his future activities had been made or mentioned at the time his services were terminated, and asked for further information relating to the restriction in the provisions of the retirement plan. The vice-president replied on January 8, 1954, and stated that Safeway felt that it would be derelict in the performance of its duties to stockholders and to other employees if it permitted the company to obligate itself for the payment of a retirement income to a competitor. The letter demanded that the employee relationship be finally severed prior to the date of the final vesting of the defendant's pension rights or that he furnish Safeway with a non-competition agreement. The $29,000 was paid to the defendant on the same day this letter was written and no mention of the payment was made.

Safeway, in resisting the motion for summary judgment, filed an affidavit of the vice-president setting forth that it was the custom and practice of Safeway in all separation arrangements to provide that Safeway could call upon the employee for consultation at any time during the period set forth in the settlement; that the employee would, therefore, remain in Safeway's employ and hold himself available and subject to call for the performance of such duties as Safeway might from time to time assign to him during the period that severance payments were received; that had the vice-president been present, the separation arrangement between Safeway and the defendant would have included such a provision; and that he believed the defendant was aware of this policy. The vice-president stated that when he wrote the letter of January 8, 1954, he had no knowledge that the two lump sum payments had been made. An affidavit of the Safeway comptroller who had jurisdiction over the payrolls stated that he caused the two lump sum checks to be

issued, and that had he had knowledge that the defendant was engaged in competition with Safeway he would have withheld the issuance of the checks.

While it is not intended as a substitute for the regular trial of cases, Rule 56 of the Federal Rules, authorizes the entry of a summary judgment when it affirmatively appears from the pleadings, depositions and admissions on file, together with affidavits, if any, that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law. Fed.Rules of Civ.Proc., rule 56, 28 U.S.C.A.; Broderick Wood Products Co. v. United States, 10 Cir., 195 F.2d 433; Harris v. Railway Express Agency, Inc., 10 Cir., 178 F.2d 8; New York Life Ins Co. v. Cooper, 10 Cir., 167 F.2d 651, certiorari denied 335 U.S. 819, 69 S.Ct. 41, 93 L.Ed. 374; Avrick v. Rockmont Envelope Co., 10 Cir., 155 F.2d 568; Schreffler v. Bowles, 10 Cir., 153 F.2d 1, certiorari denied 328 U.S. 870, 66 S.Ct. 1366, 90 L.Ed. 1640; Brooks v. Utah Power & Light Co., 10 Cir., 151 F.2d 514.[1]

On a motion for summary judgment all facts well pleaded in the complaint are admitted. Harris v. Railway Express Agency, Inc., supra; Furton v. City of Menasha, 7 Cir., 149 F.2d 945, certiorari denied 326 U.S. 771, 66 S.Ct. 176, 90 L.Ed. 466.

The theory of Safeway's claim as set forth in the complaint is that a fiduciary relationship resulted from the employment status of the defendant; that this relationship prevented the defendant from lawfully competing with Safeway; and that when the defendant violated this relationship without Safeway's knowledge, any payments made thereafter under the severance settlement were paid under a mistake of fact which would entitle Safeway to recover them. The relationship existing between the parties after the defendant's discharge is fully described in the complaint and the affidavits. There is no conflict over any issue of fact relating to the employment status of the defendant. Considering the president's letter of January 28, 1953, and the negotiations that followed, we think that no other reasonable interpretation can be given to Safeway's action than that the defendant was discharged and his employment terminated on January 28, 1953. In connection with this discharge, Safeway was to make certain payments pursuant to a severance settlement. This settlement was in writing and was agreed to by both parties. No limitations or restrictions of any kind were placed upon the payments provided for therein, although it stated that the defendant would retain his employee status for the purpose of preserving his pension rights which the president described as vested. The defendant was not to be paid a salary. He was no longer subject to Safeway's control and none was sought to be exercised. There was no agreement not to compete. When the defendant offered his services to Safeway, his offer was rejected and the defendant was wished success in any business ventures which he might see fit to enter. Without indicating that Safeway could recover the $29,000 if an employee status were established, we conclude that under the admitted facts, the employee status was retained only for the purpose of maturing the defendant's pension rights, and that in reality the relationship of employer and employee did not exist when the payment was made.

1. In Schreffler v. Bowles, supra [153 F. 2d 3] it was said:
"The salutary purpose of Rule 56 is to permit speedy and expeditious disposal of cases where the pleadings do not as a matter of fact present any substantial question for determination. Flimsy or transparent charges or allegations are insufficient to sustain a justiciable controversy requiring the submission thereof. The purpose of the rule is to permit the trier to pierce formal allegations of facts in pleadings and grant relief by summary judgment when it appears from uncontroverted facts set forth in affidavits, depositions or admissions on file that there are as a matter of fact no genuine issues for trial." (Footnotes omitted).

Generally speaking, an employee or servant is one who is under the control of, performs services for, and is paid by a master or employer for those services. 14 Words and Phrases, Employee, p. 524; Restatement of the Law, Agency, Sec. 2; Long v. Valley Steel Products Co., 10 Cir., 207 F.2d 505; Matcovich v. Anglim, 9 Cir., 134 F.2d 834, certiorari denied 320 U.S. 744, 64 S.Ct. 46, 88 L.Ed. 441; Mendoza v. Gallup Southwestern Coal Co., 41 N.M. 161, 66 P.2d 426; Villanazul v. City of Los Angeles, 37 Cal.2d 718, 235 P.2d 16; Ragano v. Socony Vacuum Oil Co., 376 Pa. 271, 101 A.2d 686; Frankle v. Twedt, 234 Minn. 42, 47 N.W.2d 482; Thiel v. Material Service Corp., 364 Ill. 539, 5 N.E.2d 88. The view that the relationship of master and servant no longer existed is substantiated by the fact that when Safeway learned that the defendant had acquired retail grocery stores which would compete with Safeway, the latter did not contend that the defendant was an employee or that his activities would affect any payments made or due the defendant except from the retirement fund.[2]

■ Without an agreement to the contrary, an employee who leaves his employment ordinarily has the right to engage in competitive business for himself and to enter into competition with his former employer. He may use the skill he has acquired or the knowledge he has obtained, and all the information he has received from his former employment so long as nothing is taken that is the property of the former employer. All that knowledge, skill and information, except trade secrets, become part of his equipment, which he may use in any business that he may thereafter undertake. These are things which cannot be taken from him. 35 Am.Jur., Master and Servant, Sec. 99; Restatement of the Law, Agency, Sec. 396; National School Studios, Inc., v. Superior School Photo Service, 40 Wash.2d 263, 242 P.2d 756; Matzen v. Horwitz, 102 Cal.App.2d 884, 228 P.2d 841; Brenner v. Stavinsky, 184 Okl. 509, 88 P.2d 613; Excelsior Laundry Co. v. Diehl, 32 N.M. 169, 252 P. 991; Garst v. Scott, 114 Kan. 676, 220 P. 277, 34 A. L.R. 395; Junker v. Plummer, 320 Mass. 76, 67 N.E.2d 667, 165 A.L.R. 1449; Witmer v. Arkansas Dailies, 202 Ark. 470, 151 S.W.2d 971.

Safeway relies upon the rule in the Restatement of the Law, Restitution, Sec. 26, relating to gifts made under a mistake of material fact and the equitable

---

2. In a letter written almost two months before the $29,000 payment, Safeway said:

"Safeway Stores, Inc.
"4th and Jackson Streets * * *
Oakland, California.
"Mailing address: P.O. Box 660
"Oakland 4, California.
"November 24, 1953.
"Mr. Herbert Wilcox, 1013 Tulane, N.E.
"Albuquerque, New Mexico.
"Dear Herb: I have just heard that you plan to enter the retail grocery business in New Mexico and Texas.
"For your own good, I think we should caution you as to any such venture since it could result in forfeiture of your pension rights under the Safeway Employee Retirement Plan.
"Paragraph 5 of Article VIII of the Retirement Plan prohibits a retired employee from engaging in a business which competes with the Company. It reads as follows:
" '5. Restrictions on employment after retirement. No member who for the calendar year preceding his retirement, received compensation at a rate of $5,000 or more per annum, shall during the first five years in which he is receiving retirement income hereunder, become engaged or employed in any occupation in any area in which the Employers are engaging in business which makes use of confidential information obtained through his employment by an Employer or which is in competition with or detrimental to the Company or his Employer. If after notice such member continues in such occupation the Committee may direct his retirement income be discontinued after he has received payments totalling the amount of his contributions hereunder with interest to the date of his retirement. In such event, such member, his spouse and the beneficiary designated shall have no further rights under the Plan.'
"Sincerely yours,
"/s/ Milton L. Selby."
"MLS:r
"Air Mail."
A letter written January 8, 1954, was of a like nature.

rule announced in Elgin v. Gross-Kelly & Co., 20 N.M. 450, 150 P. 922, L.R.A. 1916A, 711. In the Elgin case it was said that where money was paid under a mistake of material fact to one not entitled thereto and who could not in equity and good conscience receive and retain it, the law implies a promise to return the money. These rules are not applicable here. There was no mistake as to any material fact. Safeway knew to whom it was paying the money, the amount thereof, and the reason for paying it. The payment was made in accordance with a settlement which was agreed to when the defendant was discharged.

Judgment affirmed.

BRATTON, Circuit Judge (dissenting).

The purpose of Rule of Civil Procedure 56(c), 28 U.S.C., authorizing entry of summary judgment is to provide against the vexation and delay which necessarily come from the formal trial of cases in which there are no substantial issues of fact. Its objective is to permit the expeditious disposition of cases of that kind. But the procedure is not to be used as a substitute for a regular trial of cases in which there are disputed issues of fact upon which the outcome of the litigation depends, and it should be invoked with due caution to the end that litigants may be afforded a trial where there exists between them bona fide disputes of material fact. Associated Press v. United States, 326 U.S. 1, 65 S.Ct. 1416, 89 L.Ed. 2013; Zampos v, United States Smelting, Refining & Mining Co., 10 Cir., 206 F.2d 171; S.M.S. Manufacturing Co. v. U. S.-Mengel Plywoods, 10 Cir., 219 F.2d 606.

It seems clear to me that the complaint stated a justiciable cause of action; that there were bona fide issues of material fact between the parties upon which the outcome of the litigation depended; that such facts could be determined only upon a trial of the cause; and that in such circumstances the motion for summary judgment should have been denied. Accordingly, I would reverse the judgment and remand the cause for further proceedings.