[L. A. No. 2288.   In Bank.—November 4, 1909.]

## JAMES SHULTZ et al., Respondents, v. REDONDO IMPROVEMENT COMPANY et al., Appellants.

VENDOR AND VENDEE—FALSE REPRESENTATIONS—LOT BOUNDED BY ALLEY.—A false representation made by a vendor that the real property agreed to be sold is bounded by a public alley in the rear and along one of the sides of the lot, is material, and upon the discovery that the representation was false, the vendee is entitled to recover the consideration paid by him.

ID.—UNEXECUTED INTENTION TO DEDICATE ALLEY.—An unexecuted intention of the vendor to make certain pieces of land designated on a map as lots. into private alleyways for the use of adjoining lot owners, is not sufficient to constitute a dedication for that purpose.

ID.—"ALLEY" MEANS PUBLIC ALLEY.—The word "alley," when used without qualification and applied to a map or subdivision of land into lots which are offered for sale, ordinarily means a public alley.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

Gibson, Trask, Dunn & Crutcher, and Edward E. Bacon, for Appellants.

Gray, Barker & Bowen, for Respondents.

SHAW, J.—The plaintiffs sued to recover the sum of $5825.25 paid by them to the Redondo Improvement Company as the consideration for two options to purchase a tract of land belonging to said company. The judgment was in favor of the plaintiffs. The defendants appeal from the judgment and from an order denying their motion for a new trial.

The first contract was executed on July 10, 1905. It stated that the Redondo Improvement Company thereby granted to the plaintiffs, in consideration of $5443.75, then paid, the option to purchase at any time within six months, the lot in question, at the price of $16,344.65. This price was to be

paid, if the option was accepted, by applying thereon the amount paid as a consideration for the option, and by paying a like amount six months from the date of the option and a third like amount at a period not named, the last payment to be secured by mortgage on the property. If the option was not accepted, the consideration paid therefor was to be retained by the seller as the consideration for granting the option.

The second option was similar in form except that it was dated January 10, 1906, six months after the first option, that the consideration was $381.50, and that it was to be exercised within six months from *its* date and that the price was $11,282.40. The $381.50 paid as the consideration of this option was the interest which had then accrued upon the unpaid portion of the price expressed in the first option. The price named in the second option, it will be observed, was made up of the $381.50 accrued interest and the two payments of $5443.75 each, constituting the unpaid portion of the price named in the first option. It is quite obvious that the second option was, in effect, a mere renewal or extension of the first option, and that the $5443.75, paid as the consideration for the first option, was understood to be a part of the price for the sale of the lots.

The grounds upon which the plaintiffs claim the right to recover the consideration paid for the options are two: 1. That the agreements are illegal because the tract to be sold was a part of a subdivision of lots intended for sale and that at the time of the execution of the options the map of the subdivision had not been recorded or officially approved, as required by the statute of 1893 and 1901 (Stats. 1893, p. 96; Stats. 1901, p. 288) ; and 2. That the plaintiffs were induced to accept the options and pay the considerations therefor by material false representations made to them by the defendants to induce plaintiffs to enter into the contract and pay the money. A large part of the briefs of counsel is devoted to the discussion of the first mentioned ground, and of the validity and effect of the statutes referred to, as applied to the particular map in question. We do not find it necessary to take up this branch of the case. The court found in favor of the plaintiffs on both grounds and it is clear that the findings upon the second ground above stated are sufficient to

support the judgment. In that event it is immaterial whether the first ground is well taken or not.

The first contract described the property as "lot 5," block 216 of Redondo Beach Townsite, as per map recorded at page 1, book 39, miscellaneous records of Los Angeles County. The statement that the map recorded at page 1, book 39, showed any lot 5 or block 216 was erroneous. The map of Redondo Beach Townsite was recorded on April 21, 1889. It did not show any block 216. The block now designated as 216 was shown thereon as an irregular shaped tract, some 640 feet long and from 83 to 227 feet wide, and it was not numbered, lettered, or designated upon that map in any way except by boundary lines. A map was exhibited to the plaintiffs by the defendants at the time this option was made, showing a subdivision of this tract into twenty-three lots designating the tract as block 216 of the townsite of Redondo Beach, and stating that the Redondo Improvement Company had caused it to be surveyed and platted. Upon this map lot 5 was shown as a lot fifty feet wide extending across the block about midway thereof, with a narrow strip some twenty feet wide, in appearance like an alley, bounding it on the west end, and a similar narrow lot bounding it on the south side, marked respectively as "Lot A" and "Lot C." This map was recorded on August 5, 1905, in book 7 of maps, at page 150. The second option, which was executed after the recording of this map, described the property as "lot 5, block 216, of Redondo Beach Townsite, as per map recorded in book 7 of maps, page 150." The first contract, if taken alone and without aid from the unrecorded map then exhibited to the plaintiffs, would be void because of the uncertainty in the description, the map therein referred to containing no block or lot answering the description there given. The court found that it was uncertain for this reason. It may be conceded that if the map subsequently recorded was taken into consideration the uncertainty might have been removed and that perhaps it would not be fatal to the validity of the contract. But in view of the ground upon which we hold the judgment is supported it is not necessary to consider this question.

The court made its findings that at the time of the execution of the first option, the defendants falsely represented to the plaintiffs that lot 5 was bounded in the rear by an alley and

that a public alley also extended along the entire length of
one side of the lot; that plaintiffs believed the said representa-
tions to be true and did not discover the contrary until June
12, 1906, and that because of such belief they were induced
to pay the sum of $5443.75 for the first option and the
further sum of $381.50 for the second option; that the said
representations were false and that there were in fact no alleys
bounding said lot.  Each plaintiff testified that the defendant
Ainsworth, who was acting for his co-defendant in the trans-
action, made the representations substantially as the court
found they had been made.  It was not claimed that there
was any public alley adjoining or bounding the lot.  Ains-
worth testified that the two strips of land bounding the lot
were marked respectively "Lot A" and "Lot C" in order to
withhold them from dedication as public alleys and that it
was the intention to make them private alleys for the use of
the purchasers of lots in the subdivision.  There was no evi-
dence that any instrument making such dedication had ever
been executed, nor is it claimed that any such dedication has
been in fact made.  An unexecuted intention of this character
would not be sufficient to constitute a dedication of these strips
of land as private alleys or ways.  The evidence is ample to
show that plaintiffs were justified in understanding the state-
ments of Ainsworth to mean that the strips in question were
public alleys.  The word "alley," when used without quali-
fication and applied to a map or subdivision of land into lots
which are offered for sale, ordinarily means a public alley.
The testimony of the plaintiffs is that they so understood it
in this case and that their action was induced by that under-
standing.  There is no merit in the contention that the presence
of a public alley would not materially enhance the value of
the lot.  The evidence was to the effect that it would increase
its value to the extent of one half.  The representation was
clearly material.

The judgment and order are affirmed.

Henshaw, J., Angellotti, J., Sloss, J., Lorigan, J., and Mel-
vin, J., concurred.