[Civ. No. 2671.   First Appellate District, Division One.—April 15, 1919.]

C. SHERMASTER, Respondent, v. CALIFORNIA HOME BUILDING LOAN COMPANY (a Corporation), Appellant.

[1] STREETS — DEDICATION — UNEXECUTED INTENTION.—An unexecuted intention to dedicate certain land to street purposes is not sufficient to constitute dedication.

[2] VENDOR AND VENDEE — REPRESENTATION AS TO PUBLIC STREET — NATURE OF.—A representation by the vendor of real property that

the lands front on a named public street relates to the means of physical access to the property, and does not refer to an intangible quality in the roadway giving it the status of a public street.

[3] ID.—FALSE REPRESENTATION AS TO STREET—RIGHTS OF VENDEE.— A false statement by a vendor that the real property agreed to be sold to the vendee is bounded by a public street, on the front, is a most material representation, and upon discovery that such representation is false, the vendee is entitled to demand, and recover, the consideration paid by him, also to recover the value of the improvements made on the premises, after deducting therefrom the fair rental value of the property.

[4] ID.—KNOWLEDGE OF TRUTH OF REPRESENTATIONS — ESTOPPEL.—If the vendee avails himself of an opportunity to test the truth of the representations made by the vendor, and thereby discovers prior to the consummation of the contract that such representations are false, or by the exercise of reasonable diligence could have so ascertained, he will not be heard to say that he was deceived by them.

[5] ID.—REPRESENTATIONS OF VENDOR—RIGHT OF VENDEE TO RELY ON.— Where the vendee, who was but a laborer and not accustomed to buying land, was given a map showing the existence of a street in front of the property, and the result of the physical examination of the property made by him, before entering into the contract to purchase the first lot, was not such as to destroy his belief in, and reliance on, the vendor's representations, he was entitled to rely on such representations.

[6] ID.—KNOWINGLY MAKING FALSE STATEMENTS—EFFECT.—One who makes statements false in fact, and induces another to buy property, cannot defeat liability for the false statements by showing that if the other party had suspected him of falsehood or doubted the accuracy of the statements, such party, by ordinary diligence and by inquiry of persons whom he knew to be cognizant of the truth, could have learned of the accuracy or falsity of the statements.

[7] ID.—DUTY OF VENDEE TO INVESTIGATE STATEMENTS OF VENDOR.— One party to a contract is under no obligation to investigate and verify the statements, to the truth of which the other party to the contract, with full means of knowledge, has deliberately pledged his faith.

[8] ID.—ACT TO RESCIND CONTRACT — COMPUTATION OF AMOUNT OF JUDGMENT.—In an action for the rescission of a contract for the sale of real property, a judgment for the plaintiff computed by adding the amount paid by the plaintiff on account of the purchase of the lots, plus interest, with a sum added for the "value of improvements placed on the land and premises, exclusive of any sum due defendant from plaintiff for use and occupation of said land

and premises since said contract of sale was entered into," is correct.

[9] Id.—Cost of Improvements—Evidence of Value.—In such an action, testimony as to the cost of the improvements placed on the land and premises is some evidence of value.

[10] Id.—Offer to Rescind — Sufficiency of.—A written offer to rescind, accompanied by tender of a quitclaim deed to the premises upon given terms, is sufficient. The fact that the vendee demands more from the vendor than he is entitled to recover, in the absence of a specific objection made to the tender, does not invalidate such offer.

[11] Id.—Continuance in Possession—Waiver of Right to Rescind. The right to rescind a contract for the sale of real property on the ground of fraudulent representations is not waived by remaining on the property after offer of rescission, where such occupancy is continued for the purpose of protecting the property for all parties to the litigation, and the vendor is not injured thereby.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Thomas F. Graham, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. S. Hutchinson and Walter Slack for Appellant.

Henry L. Corson for Respondent.

WASTE, P. J.—Plaintiff had judgment rescinding and canceling two contracts of sale and purchase of real property, and defendant appeals.

From the findings of fact, which are amply supported by the evidence, it appears that the parties entered into two contracts in writing, whereby they mutually agreed that defendant should sell, and plaintiff should buy from defendant, two lots of land situated in the city and county of San Francisco. The particular description of the lot of land, in each contract, began as follows: "Commencing at a point on the westerly line of Wieland Street, distant thereon, etc., from the southerly line of Sunnydale Avenue; running thence southerly along said westerly line of Wieland Street, etc."

[1] Wieland Street was not, at the time of making of the contracts, and never had been, a public street south of Sunnydale Avenue. Some years previously the then owners

of the property filed in the office of the county recorder of the city and county of San Francisco private maps showing the existence of such street, and indicating thereby a probable intention to dedicate the land to street purposes. No evidence was offered to show acceptance by the city of this land, so indicated on the maps, or acts by anyone amounting to such dedication or user. An unexecuted intention of this character would not be sufficient to constitute dedication. (*Shultz* v. *Redondo Improvement Co.*, 156 Cal. 442, [105 Pac. 118]; *People* v. *Reed*, 81 Cal. 70, [15 Am. St. Rep. 22, 22 Pac. 474].)

Some reliance is placed by appellant upon a deed between private parties conveying from one to the other a strip of land, which appears to be coincident with the parcel, which the appellant claims is Wieland Street south of Sunnydale Avenue, but we see nothing in this private document creating a public easement for street purposes. There was testimony that negotiations appeared to have been commenced between the present owner of the property and the city and county looking to a possible dedication and opening of Wieland Street past plaintiff's land, deeds having been tendered for that purpose. But there was no showing that such result was presently probable, and no evidence which would in any way indicate that plaintiff, or anyone, had the right to use the strip of land represented by defendant to be Wieland Street, adjacent to the property in question, for street purposes.

Plaintiff believed, and relied on, the representations of defendant, concerning the existence of an open, public street, and would not have bought the lots, supposed to front thereon, had he known there was no way of reaching his property, other than over privately owned lands. He began living on the first lot purchased in April, 1914, and in June of the same year he executed the contract for the purchase of the second parcel. He first became aware of the true state of affairs when, in December, 1914, he found his property entirely cut off from any ingress or egress, by fences erected all around his property by the owner of the surrounding land. He demanded of defendant a rescission of the contracts, which, being refused, he executed and tendered quitclaim deeds of the property and brought this action.

It appeared from the testimony that during the preliminary negotiations leading to the signing of the first contract, defendants represented to plaintiff that the lot he was purchasing was bounded on the front by Wieland Street, that Wieland Street was an open street, south of Sunnydale Avenue, and that the property could be driven to in wagons from any direction. Plaintiff was shown a map or plat of the property on which Wieland Street was designated as fully laid out. Plaintiff visited the property before signing the contract, approaching it from Walbridge Street, which was on the south of the tract of land, going over the adjacent lots to reach it. He located the exact property by "stepping it off from Sunnydale Avenue." He saw a fence to the north, and between the land he was intending to buy and Sunnydale Avenue. On this fence was a sign bearing the name "Wieland Street" in large letters. There were no indications on the ground of a street leading to or adjacent to the property. Plaintiff communicated the fact of his discovery of the fence to the defendant's agent, who assured him that it was not rightfully there and he "would go out with an automobile and tear the fence down."

[2] We cannot adopt the suggestion of appellant on this appeal that the representation of defendant, alleged and found to the effect that the lands and premises described in the contracts "fronted on a public street, to wit, Wieland Street," had no relation to the means of physical access to the property, "but refers to an intangible quality in the roadway, giving it the status of a public street."

[3] The false statement, made by the defendant, that the real property, agreed to be sold to plaintiff was bounded by a public street, on the front, was a most material representation. Upon discovering that the representation was false, plaintiff was entitled to demand, and recover, the consideration paid by him. (*Shultz* v. *Redondo Improvement Co., supra.*) He was also entitled to recover the value of the improvements made on the premises, after deducting therefrom the fair rental value of the property. (*Garvey* v. *Lashells,* 151 Cal. 526, [91 Pac. 498]; *Gates* v. *McLean,* 70 Cal. 50, [11 Pac. 489].)

The appellant contends that the plaintiff is estopped to claim a reliance on its representations, because he went on the land and examined it before signing the first contract,

and lived on that portion several months before buying the second piece. **[4]** Generally speaking, if one under such circumstances avails himself of an opportunity to test the truth of the representation made, and thereby discovers, prior to the consummation of the contract, that such representations were false, or by the exercise of reasonable diligence could have so ascertained, he will not be heard to say that he was deceived by them. (*Gratz* v. *Schuler*, 25 Cal. App. 117, [142 Pac. 899].) **[5]** But we do not believe it requires citation of authority to establish that the situation of the parties, in the present case, gave plaintiff the right to believe and rely on the representations made by defendant. The trial court found that he was a laborer, and not accustomed to buying land. The evidence before us as to the lots, their location, condition of adjacent streets, fencing thereabouts, and ways of ingress and egress, warrants the conclusion that they formed part of a larger, unimproved tract of land. All the streets in the vicinity appear to have been obliterated by the use of the tract as vegetable gardens. The result of the physical examination of the property made by plaintiff, before entering into the first contract, under these circumstances, was not such as to destroy his belief in, and reliance on, defendant's representations. He had been given a map showing the existence of the street. The assurance of defendant's agent concerning the fence would only serve to confirm his belief, and strengthen his reliance upon the truth of defendant's word.

The lots had been owned by the defendant for many years before the making of the contracts with plaintiff. The defendant knew that Wieland Street, adjacent to the property, was not a public street, and that there was trouble in relation thereto. The president of the defendant company testified that he was familiar with the condition of the streets and roadways in the tract, "having been out there probably two or three or more times a year since 1906." He further testified that "at none of the times he had been on the property was the portion of Wieland Street as shown on the map, south of Sunnydale Avenue, extending through the property of Crim, open." The agent, Webb, to whom defendant intrusted the sale of the lots in the tract, testified that at the time of the sale he told plaintiff the condition of Wieland Street, and the fact that it was not a public street at tha⁺

time, but that he thought it could be opened.    On the issue presented by the conflict of evidence, arising from all the testimony bearing on this subject, the trial court found in support of plaintiff, and we are bound by the finding in that regard.

[6]  "One who makes statements false in fact, and induces another to buy property, cannot defeat liability for the false statements by showing that if the other party had suspected him of falsehood or doubted the accuracy of the statements, such party, by ordinary diligence and by inquiry of persons whom he knew to be cognizant with the truth, could have learned of the accuracy or falsity of the statements." (*Spreckels* v. *Gorrill*, 152 Cal. 395, [92 Pac. 1017].)

[7]  "One party to a contract is under no obligation to investigate and verify the statements, to the truth of which the other party to the contract, with full means of knowledge, has deliberately pledged his faith."    (*Dow* v. *Swain*, 125 Cal. 674, [58 Pac. 271].)

[8]  Plaintiff fenced a portion of his land, dug a well, put in a pump, and built a small house, all at a "cost" of more than five hundred dollars.    The evidence relating to the value of the improvements placed on the property by the plaintiff seems to have been largely confined to the question of the *cost*.    Only one witness (for defendant) fixed the *value* of the house at $150.    The court in its findings arrived at the amount of the judgment for the plaintiff by adding the amount paid by plaintiff on account of the purchase of the lots, plus interest, with $250 added for "value of improvements placed on the land and premises, exclusive of any sum due defendant from plaintiff for use and occupation of said land and premises since said contract of sale was entered into."    Provided there was evidence to support the finding in this regard, the method of determining the amount of the judgment was correct.    (*Garvey* v. *Lashells, supra; Gates* v. *McLean, supra*.)

[9]  The testimony as to cost of the improvements was some evidence of value.

Furthermore, no objection was made at the trial as to this method of fixing the value, which seems to have been acquiesced in by all parties and by the court.

The rental value of the property was established by a witness for defendant.    While the court's finding is not as full

and explicit as it might be, we are of the view that it was justified by the evidence and is sufficiently clear to support the judgment.

[10] Appellant contends that the plaintiff did not give proper notice of rescission prior to the commencement of the action. When plaintiff found there was trouble about the street, he moved very promptly. He notified defendant, and was told by its officers, "the best thing to do is to see your lawyer, and we will see our attorney. We sold the property as we bought it." He did see his lawyer, who wrote to defendant, on behalf of plaintiff, "I am now making you an offer to rescind his contracts," describing them, "and Mr. Shermaster herewith makes you a tender of a quitclaim deed to all his interest in and to said land upon the payment to him of the sum already paid, etc.," specifying the amounts of purchase price (with interest), the cost of improvements and damages. Plaintiff had previously executed such a quitclaim deed and it was in the hands of his attorney for delivery.

Defendant, by its attorney, in reply to the notification by plaintiff, just referred to, wrote that it expected "to carry out to the fullest extent all their agreements with Mr. Shermaster [plaintiff]. They, however, do not accept any offer made by you to rescind his contracts. They also take exception to any alleged tender which you suggest in regard to a quitclaim deed." The communication further stated that when all payments had been made by plaintiff, defendant would "give him deeds in accordance with the terms of his respective agreements."

Here was a sufficient offer, and a direct refusal of rescission. Plaintiff demanded more from defendant than he was entitled to recover, but in the absence of any specific objection made to the tender, the exception thereto noted, availed defendant nothing, and must be now disregarded. (Civ. Code, sec. 1501; Code Civ. Proc., sec. 2076; *Kofoed* v. *Gordon*, 122 Cal. 314, [54 Pac. 1115]; *Latimer* v. *Capay Valley Land Co.*, 137 Cal. 286, [70 Pac. 82].)

The contracts of sale were executory, and the acceptance of the quitclaim deed by defendant would have restored everything of value which plaintiff had received from it.

[11] It developed during the trial that after the offer of rescission, plaintiff remained, and was still living, on the

premises. He testified that unless he did so the house would be carried away, owing, no doubt, to its location in a sparsely inhabited neighborhood. Appellant contends that plaintiff, having remained in possession, cannot maintain this equitable action in rescission, but must be relegated to a legal action for damages for breach of contract. In our view, under the evidence, plaintiff's so-called possession was only an effort made in good faith to protect the property for all parties to the litigation. He had made a good tender of restoration of the premises which was refused. If he abandoned the premises the improvements would be carried away by vandals. He came into court and offered to do equity, when in his complaint he offered to make a quitclaim deed to the land to defendant upon cancellation of the contracts being adjudged. The court, in its decree, directed that such quitclaim be executed. We do not believe that plaintiff's remaining on the premises under the circumstances amounted to a waiver of his right to rescind.

Defendant has not suffered any injury by reason of plaintiff's act in remaining in such tentative possession, for the court found that the value of the improvements placed on the land, exclusive of any rental that might be due defendant for the use and occupation of the land, was the sum of $250. We may assume that the court allowed defendant the sum of eight dollars per month for the use of the land, that being the sum fixed by its own witnesses, for the full period of the twenty-four months from the date of occupation by plaintiff to the trial. We may further assume that the court fixed in its own mind the value of the improvements at somewhere near the amount they cost, that being the course pursued in the examination of the witnesses by the court. The judgment as rendered appears to give defendant full credit for the reasonable use and occupation during the term specified, and under the circumstances it should not be heard to complain.

What we have last said also disposes of defendant's contention that the judgment was excessive.

The judgment is affirmed.

Kerrigan, J., and Richards, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 15, 1919, and a petition to

have the cause heard in the supreme court, after judgment in
the district court of appeal, was denied by the supreme court
on June 12, 1919.

All the Justices concurred.