[Civ. No. 18056. Second Dist., Div. Two. Mar. 19, 1951.]

WARREN C. MATZEN, Respondent, v. MORRIS HORWITZ, Appellant.

886

Loeb & Loeb and Herman F. Selvin for Appellant.

Russell K. Lambeau for Respondent.

WILSON, J.—Action for damages for breach of contract and for unfair competition. From a judgment in favor of plaintiff, defendant has appealed.*

Plaintiff and defendant are doctors of medicine licensed to practice in California. Each specializes in diagnostic and therapeutic radiology. For several years prior to World War II plaintiff had maintained a 10-room suite of offices. His practice consisted entirely of patients referred to him by other physicians for the purpose of diagnosis and for therapeutic treatments. He employed two secretaries and two, sometimes three, technicians, who were required in the care of his patients. Upon his entry into the United States Army, to the end that his practice should continue intact so that he would be able to resume it upon his return from military service, plaintiff entered into a contract with defendant on February 15, 1943, whereby the latter went into the possession of plaintiff's office and equipment, retaining his staff of employees. The contract, which was prepared by defendant's attorney, after reciting that plaintiff was the owner of the office furniture and furnishings and was a conditional vendee of miscellaneous X-ray apparatus and equipment located in an office which he had maintained under a written lease for a term of years and that it was the plaintiff's desire that defendant carry on the practice at that office and defendant desired to use the equipment, furniture and furnishings therein, provided among other things as follows:

"5. In consideration of the matters herein and hereinafter contained the second party [defendant] agrees to devote his best talents to the maintenance and preservation of such prac-

*A purported appeal was filed by defendant's former counsel from the order denying his motion for a new trial, a nonappealable order.

tice and clientele now possessed by the Office and to the fostering and development of an enlarged practice and clientele, upon the following terms and conditions: . . ." Then followed provisions for the division between plaintiff and defendant of the net receipts derived from the practice and the formula by which defendant was required to account to plaintiff for the receipts and disbursements. The agreement contained a provision that either party thereto might terminate the agreement by giving to the other a 60-day notice in writing of his intent to terminate.

Upon his separation from Army service plaintiff, desiring to return to his practice, served a written notice on defendant on January 25, 1946, that the contract would be terminated on March 31, 1946.

The court found that defendant devoted his best talents to the preservation, maintenance and enlargement of the practice and clientele of the office until on or about February 1, 1946, "but that after said date and contrary to the terms of said contract the defendant did not devote his best talents to the preservation or maintenance or enlargement of the practice or clientele of said office but on the contrary the defendant between February 1, 1946, and March 31, 1946, arranged to and did wilfully and intentionally divert away from the plaintiff a large and substantial portion of plaintiff's practice and that by reason thereof plaintiff suffered damage in the sum of $18,084.06."

The court further found that between February 1, 1946, and March 31, 1946, defendant schemed and planned to and did misuse and abuse the confidential knowledge entrusted to him concerning plaintiff's practice and clientele by prevailing upon such clientele to discontinue dealing with plaintiff and to patronize defendant; that having exerted his utmost efforts during the existence of the contract to gain the confidence of the referring doctors, employed means to accomplish his purpose as follows: (a) he solicited plaintiff's clientele of referring doctors by sending them written announcements of the opening of his office at another location; (b) during March, 1946, he made appointments to see at his new office patients who had been referred to plaintiff's office.

The court found that without having succeeded in making contacts with such referring doctors and without having gained information and knowledge concerning them during the existence of the contract, defendant could not have taken the business away from plaintiff; that when plaintiff resumed pos-

session of his office on April 1, 1946, he discovered that a large portion of his practice and clientele had gone and that defendant, as the direct and proximate result of his acts above mentioned, was receiving the patronage thereof at the new office which defendant had opened for himself, in consequence of which plaintiff had suffered damage.

Defendant contends that the evidence does not sustain the findings and that the findings do not support the judgment. It is his contention that by reason of the failure of the contract to restrict him by negative covenant or otherwise in the practice of his profession on his own account after the termination of the contract he was at liberty, upon his dissociation from plaintiff's office, to take the practice with him to his new location.

The finding that between February 1, 1946, and March 31, 1946, defendant planned to misuse the confidential knowledge which he had obtained regarding plaintiff's clientele is sustained by the evidence, and that he accomplished his purpose and intent of taking the business with him is well established by the uncontradicted facts. Although prior to April 1, 1946, there had been in the office an average of 500 patients a month who had been referred by other physicians, on that date when plaintiff resumed possession of his office only one appointment was on the books. During nine months after plaintiff resumed practice patients averaged 103 a month from the same sources of reference—a difference of 80 per cent. Defendant took with him the secretaries and technicians who had assisted in the office and left only one employee, an inexperienced secretary.

The practice conducted by defendant after the execution of the contract consisted, as had plaintiff's practice prior thereto, of patients of other physicians who were referred by them for diagnosis or for therapeutic treatments. The average monthly profit of the office was $6,300 for the first three months of 1946; plaintiff's first month's operation (April) resulted in a loss of $124.18. All therapy patients were gone.

Defendant, upon leaving plaintiff's office on April 1, 1946, simultaneously became associated with one Dr. Bailey, also a radiologist. As found by the court, he solicited the referring doctors to send their patients to him at his new location and made appointments with patients to visit him there. The loss to plaintiff and the gain to defendant by the latter's taking the business with him is indicated (1) by the absence of business in plaintiff's office above related, and (2) by the

immediate increase in the practice referred to the Bailey office. In March, 1946, there were 45 referred patients in the latter office yielding $835.40 and in April and May 542 patients, providing a dollar volume of business of $16,995.87. These patients were referred to the Bailey office by 99 of the doctors who had referred their clientele to plaintiff's office while defendant was in charge of it.

The foregoing facts, the evidence of which is undenied, show conclusively that defendant took with him to Dr. Bailey's office the practice which rightfully belonged to plaintiff. Defendant later admitted to plaintiff that he had taken the practice with him, and that while in charge of plaintiff's office he had made appointments for patients to come to Dr. Bailey's office. He said he regretted his mistake and intended to make restitution.

■ The evidence sustains the findings of the court that (1) defendant devoted his talents to the preservation and enlargement of the practice and clientele ''of the office'' until February 1, 1946, and (2) thereafter he wilfully diverted the practice from the office. The evidence shows that beginning with that date, five days after the notice of termination of the contract had been given by plaintiff, defendant's attitude changed. Among other things defendant refused plaintiff's request that he be permitted to return to the office prior to April 1, 1946, in order to familiarize himself with its details and with the practice and clientele that had come into the office during his service in the Army. Defendant's excuse for such refusal was that the office (10 rooms, 1,200 square feet) was too small! Obviously he did not intend that plaintiff should have an opportunity of meeting the patients who visited the office or that the patients should know of plaintiff's existence.

With knowledge that upon plaintiff's return from the service he would terminate the contract and endeavor to reestablish his practice, defendant, while building up the practice of the office, had prepared well in advance for such eventuality. His sinister intent to appropriate the business to his own personal use and benefit developed within a short time after he took charge of the office and continued during his tenure. He attempted on more than one occasion, while plaintiff was overseas, to obtain a lease in his own name of the office on which plaintiff had had a lease for several years. Defendant naively replies that in so doing he did not violate a duty to plaintiff since he was looking forward to a time when the contract would no longer be in force and he would be free to compete

with plaintiff in all respects—even to the extent of leasing plaintiff's offices from under him. Inasmuch as plaintiff had a right to terminate the contract at any time on 60 days' notice how could defendant have looked forward to a date so indefinite? In his deposition when asked with reference to building up plaintiff's practice, he answered "by that time it had become my practice . . . I would say it was practically the second or third month I was there."

Early in 1943 defendant omitted plaintiff's name from the printed reference cards—the cards on which a record was kept of the name of each patient referred to the office by other physicians, the purpose of the reference and the name of the referring doctor. Only defendant's name appeared on such cards. The reason for such omission, according to defendant's testimony, was that a great number of physicians said they did not know who Dr. Matzen was and the witness, so he testified, was agreeable to their not knowing who he was. That such action was not according to professional standards and that defendant was apparently not interested in such standards is shown by the testimony of Dr. Bailey that when his association with defendant began his, Bailey's, name did not appear on the reference cards used by defendant; because of such omission Bailey "raised an awful fuss about it." Defendant sent out announcements of the removal of his office but he did not advise any of the patients that he preferred that they remain under plaintiff's care rather than follow defendant, nor did he advise any doctor or patient, either in his announcements or orally, that plaintiff was returning to his practice. Insofar as defendant could devise, plaintiff was nonexistent. The announcements were sent to plaintiff's clientele among the medical profession while the contract was still in force—about two weeks prior to April 1, 1946. Until that date defendant was serving plaintiff's clientele, not his own. This occurred before plaintiff had had an opportunity to obtain any information regarding the business of the office after an absence of three years.

The finding that defendant could not have taken plaintiff's business away from his unless, during the existence of the contractual relations between them, the latter had been able to make contact with the referring doctors, and to gain information and knowledge concerning such doctors, has ample support in the evidence. Prior to defendant's association with plaintiff he had been a full time employee in a Chicago hospital at a monthly salary of $350. He had re-

mained in the same hospital ever since completing his internship. With such background and without acquaintance among the members of the medical profession in Los Angeles and Beverly Hills it is not reasonable to assume that he could by fair means have uprooted another radiologist's practice and taken for his own not only the practice but the staff of technicians. Things do not happen that way.

Defendant does not attempt to professionalize his conduct nor does he assert it was ethical. His attempted justification is based on the absence from the contract of a negative covenant restricting him from doing as he did. He contends that by reason of there being no restraining provision in the contract he was within his legal rights in appropriating the practice that had been entrusted to him by plaintiff—a practice to the maintenance and preservation of which he had solemnly agreed to devote his best talents. For whom? For himself, says defendant. Whatever may have been his intent when he signed the contract he now takes the position that he was developing an enlarged practice for himself. During the two weeks ending March 30, 1946, defendant treated 67 therapy patients. He told them of his new office but did not suggest to any of them that he preferred that they remain under plaintiff's care rather than follow defendant. Although he testified that he gave them a choice of going with him to his new location or remaining with plaintiff's office, the court evidently was not impressed with his testimony since the finding is that during February and March, 1946, defendant wilfully and intentionally diverted from plaintiff a large and substantial portion of the latter's practice. Nor was the court impressed with the theory that in radiological practice therapy patients desire continuity of service by one practitioner. Two witnesses testified that it is not in keeping with good medical practice to change doctors during a course of treatments; two expressed contradictory views, stating that such procedure is not only proper but is followed in actual practice. Since the court did not find on conflicting evidence in accordance with defendant's theory we cannot do so. It is in the record that during defendant's absence from the office on a vacation the practice proceeded without interruption, and as far as appears from the evidence without objection from the patients, in change of another doctor who had not previously seen any one of them. Moreover, when defendant took over plaintiff's office in 1943 there was no stoppage in the references of

patients and those who were then being treated by plaintiff continued under defendant's ministration.

In every contract there is an implied covenant of good faith and fair dealing and that neither contracting party will do anything that will destroy or injure the rights and interests of the other party. It is not necessary that such a covenant be spelled out in order to ensure that one party will not take advantage of a situation such as that presented in this action. Defendant's course of conduct beginning at the time he said the practice had become his own, three months after he took charge of plaintiff's office, until the termination of the contract, indicates an intent and purpose on his part to convert plaintiff's well established practice to his own use and benefit.

Defendant agreed, during the term of the contract, to devote his talents to the enlargement of the practice—plaintiff's practice, of course, since that was the only matter that was the subject of the agreement. He did develop and maintain the practice but during the last two months of the term of the contract he destroyed it insofar as plaintiff is concerned by arranging to take it with him. The announcement of his removal did not state that plaintiff was returning. It merely stated defendant was moving to another location. The evidence is that his announcement was in the customary form but there is no evidence that it is regarded by the medical profession as professional or proper to send such announcements while the sender is under contract with another physician to preserve the latter's practice. He did not suggest to a single patient that he or she return to plaintiff's office after April 1, 1946. Defendant's statements to patients amounted to a solicitation that they continue their relations with him and the announcements were tacit invitations to the doctors to refer their patients to him. It was plaintiff's business that defendant was dealing with, not his own. Nor did he have any interest in the practice except a division of its proceeds according to the formula provided in the contract. Evidence of such acts, together with evidence of other conduct herein related, sustains the finding of the court that defendant wilfully and intentionally diverted a large portion of plaintiff's practice to his own use.

Although, as defendant asserts, he was not prohibited from entering practice on his individual account after the termination of his relations with plaintiff, there is no implication in

the contract that not only could he take plaintiff's practice but could make arrangements to do so during the term of the contract under which he was constrained to maintain and preserve the practice and clientele for plaintiff.

The complaint as above stated seeks damages based on two separately stated causes of action: (1) breach of contract, (2) unfair competition. We have not had the difficulty that defendant professes to have had in determining on what basis the judgment was rendered. The findings are responsive respectively to each cause of action and are separately and distinctly stated. The court expressly found (Finding IV), referring to the allegations in the second cause of action, that between February 1, 1946, and March 31, 1946, defendant breached the contract in the manner hereinbefore recited. Findings V and VI relate just as expressly, separately and distinctly to the third cause of action, which contains typical allegations found in complaints for unfair competition, and particularize the acts which the court concluded constituted such unfair competition, resulting in defendant's appropriation of the business to his personal use.

The findings as to either cause of action standing alone support the judgment and the evidence supports the findings with reference to the breach of contract.

There is no question as to defendant's right, in the absence of an agreement on his part to refrain from engaging in radiological practice in competition with plaintiff, to have gone into business for himself upon the termination of the contract. It is therefore unnecessary to discuss the cases cited by defendant holding that an employee, in the absence of a contractual inhibition, has the right to enter into competition with his former employer, including the right to solicit persons who had been customers of such former employer. Such decisions declare that the competition must be fair and must be legally conducted. An example of cases so holding is *Continental Car-Na-Var Corp.* v. *Moseley*, 24 Cal.2d 104 [148 P.2d 9]. The Continental case and the several other decisions that defendant cites have nothing to do with the cause of action for breach of contract. They relate to the charges of unfair competition.

Since the evidence and the findings support the judgment on the cause of action alleging breach of the contract, defendant's contention that the third cause of action is not supported by the record need not be considered. (*Gudger*

v. *Manton,* 21 Cal.2d 537, 544 [134 P.2d 217] ; *Shultz* v. *Redondo Imp. Co.,* 156 Cal. 439, 441 [105 P. 118].)

Defendant maintains that plaintiff is not entitled to recover damages because he did not seek equitable relief—an injunction to restrain defendant's misuse of the confidential information acquired by him regarding plaintiff's practice. Such contention has reference to the third cause of action and for the reasons above stated need not be considered.

Judgment affirmed. Appeal from order denying motion for new trial dismissed.

Moore, P. J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 17, 1951.