[Civ. No. 23490. First Dist., Div. Three. Oct. 4, 1967.]

DANIEL J. CORRIGAN, Plaintiff, Cross-defendant and Appellant, v. WILLIAM E. COX, Defendant, Cross-complainant and Respondent.

Johnston & Miller and Glenn E. Miller for Plaintiff, Cross-defendant and Appellant.

Rolf M. Bondelie, Eleanor M. Kraft and Kraft & Kraft for Defendant, Cross-complainant and Respondent.

SALSMAN, J.—The parties to this appeal are dentists. They were formerly associated together in the practice of their profession. At the termination of their association, appellant Corrigan sued respondent Cox for breach of contract, and the alleged wrongful taking and withholding of patients' records. He demanded damages, together with an injunction against what he essentially described as unfair competition. Cox counterclaimed for money alleged to be due him from Corrigan, cross-complained for breach of the agreement of association, and demanded damages for alleged restraint of trade by Corrigan. After a lengthy trial Cox prevailed. The court found him entitled to $4,239.24 in fees for professional work done during their association, and decided that after termination of their association respondent was free to compete with appellant in the practice of dentistry, to use the records of patients treated by him during the association of the parties, and to solicit the further patronage of such patients.

Corrigan had an established dental practice in Saratoga, and needed an assistant to help him care for a mounting caseload of patients. Cox had no civilian dental practice prior to his association with Corrigan. Their written agreement of association provided that Cox should become Corrigan's "associate"; that patients would be "appointed" to either dentist, depending solely upon which had available time, and that Cox was to receive one-half the fees from patients treated by him, less laboratory charges. Existing office, clerical and accounting procedures of the Corrigan office were continued, but as time passed, patients' records became separated between the two dentists, and each patient's record bore the name of the treating dentist, although all records were kept in the same file.

After approximately 18 months of successful association, Cox decided to withdraw and establish his own practice. He arranged for office space about half a mile from the Corrigan office. He duplicated the records of the patients he had been treating during his association with Corrigan—approximately 900 in all. Cox gave Corrigan notice of termination of the agreement of association, and when the notice period had passed, opened his own office at the location he had rented. He sent notices to all patients under his care while in association with Corrigan, and sought to and did collect from many of them for services rendered while with Corrigan. Corrigan in turn also sought the continued custom of patients treated by

Cox at the Corrigan office, and also sought to collect from them for work done by Cox before the agreement of association was terminated.

 Of the approximately 900 patients whose records were copied by Cox, and to whom he sent announcements of his new location, and whose patronage he solicited, all but a small percentage had come to the Corrigan office after the association agreement had been entered into and had never been treated by Corrigan. Cox took no copies of records of patients treated by Corrigan—about 1,500—and made no attempt to attract them, nor did he send them any notice of the termination of his association with Corrigan, or of the location of his new office.

Of the approximately 900 patients to whom Cox sent notices of the opening of his new office, and whose patronage was also solicited by Corrigan, all but a very small number continued with Cox at his new location.

Appellant raises several issues on this appeal, but as will appear, most challenge the sufficiency of the evidence to support the trial court's findings and judgment. The burden resting upon an appellant whose appeal is cast in this light has been stated too often to deserve repetition. (See *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]; *Cavero* v. *Franklin etc. Benevolent Soc.*, 36 Cal.2d 301 [223 P.2d 471]; *Richter* v. *Walker*, 36 Cal.2d 634, 640 [226 P.2d 593]; *Vaughn* v. *Jonas*, 31 Cal.2d 586, 593 [191 P.2d 432]; *Correa* v. *Quality Motor Co.*, 118 Cal.App.2d 246, 253 [257 P.2d 738], and Justice Vallee's lament in *Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367, 370 [210 P.2d 757].)

Appellant first contends that respondent's conduct in copying patients' records without his knowledge and consent, and later sending announcements of his new location to such patients, and seeking their continued care, violated the standards of professional ethics and caused appellant financial loss for which he is entitled to be compensated.

One of the "principles of ethics" of the American Dental Association reads: "Announcement cards may be sent when there is a change in location or an alteration in the character of practice, but only to other dentists, to members of other health professions *and to patients of record.*" (Italics ours.) There can be no doubt that this rule is applicable to the parties here, because both concede that they were members of that association, and had agreed to abide by its rules and regulations. There is also no doubt that California

courts, and courts elsewhere, have recognized the enforceability of the rules and regulations of professional associations. (See *DeMille* v. *American Fed. of Radio Artists,* 31 Cal.2d 139 [187 P.2d 769, 175 A.L.R. 382] ; *Williams* v. *Inglewood Board of Realtors, Inc.,* 219 Cal.App.2d 479 [33 Cal. Rptr. 289] ; 6 Am.Jur.2d, Associations and Clubs, § 37, pp. 466-467.) ■■■ The real issue here, therefore, is whether the patients to whom Dr. Cox sent his announcements were his "patients of record" or were "patients of record" of Dr. Corrigan.

Appellant produced Dr. Cupples, an expert witness, to aid the court in ascertaining the meaning of the term "patients of record." Dr. Cupples' testimony tended to indicate that generally a dentist, such as Corrigan, who has the financial responsibility for the maintenance of the dental office also has primary responsibility for the treatment of the patients, and hence they are his "patients of record." On our facts this could only mean Corrigan. But respondent testified to his belief that all of the patients he treated were "his patients," and not those of Dr. Corrigan. The agreement of association contains language referring to "his patients" (i.e., those of Dr. Cox), and provides that "His [Dr. Cox's] patients' records will be kept separate from those of Dr. Corrigan's." Other evidence disclosed the separate treatment of the two groups of patients, as well as the separation of their records. Thus the trial judge was faced with a familiar quandary—a conflict of evidence on an issue of fact. He resolved the conflict by finding that the patients Dr. Cox had treated, whose records were kept separately, were Dr. Cox's "patients of record"; that upon termination of the association between the two dentists Dr. Cox was entitled to copies of the records of patients he alone had treated, and that he violated no precept of ethics when he later notified them of the opening of his new office and invited their future care.

Contrary to appellant's assertion, the trial court did not arbitrarily disregard the testimony of his expert witness. Rather, it appears that the trial judge weighed all of the evidence and testimony in making his findings, and found the other evidence more compelling than the testimony of the expert. We, of course, cannot disturb his resolution of the conflict. It is supported by substantial evidence, and we must accept it.

■■ In a similar manner, appellant argues the written agreement between the parties establishes that respondent was

his employee, and nothing more. Obviously, if respondent was a mere employee of appellant, he could not take with him such things as patient lists and records upon termination of his employment, nor could he solicit the patients of his former employer. Again appellant relies upon his expert witness, who testified that in the field of dentistry the term ''associate'' simply means the ''employee'' of another dentist. Appellant emphasizes that the agreement itself states that he ''. . . will *engage* Dr. Cox as an associate for the purpose of the practice of dentistry; . . .'' (Italics ours.) The word ''engage'', according to appellant can mean only that respondent was hired, and hence was an employee.

But here again, the testimony was in conflict. Respondent testified to his belief that, as an associate he was an independent contractor, and that the patients he treated, and those who were referred to him for treatment by patients he was then treating, were his own.

There was also significant evidence showing that the parties themselves did not regard their relationship as that of employee and employer. Thus, Dr. Corrigan did not withhold any income taxes from Dr. Cox's pay, nor did he deduct Social Security taxes or match such taxes with an employer's contribution—all of which he should have done if Dr. Cox was his employee. It does not appear that appellant paid unemployment insurance taxes upon his asserted employee, or that mandatory workmen's compensation insurance was obtained in his behalf. Finally, appellant's accountant, who drew the agreement of association, assisted respondent in the preparation of his personal income tax return, including computation of ''self employment'' taxes. This evidence is sufficiently substantial to support the trial court's conclusion that respondent was not an employee of appellant.

Appellant finally contends that respondent's conduct constituted a breach of implied terms of the association agreement. As appellant correctly states, there is implied in every contract a covenant of good faith and fair dealing, so that neither party may do anything that will injure or destroy the rights or interests of the other party to the agreement. Appellant cites *Matzen* v. *Horwitz*, 102 Cal.App.2d 884 [228 P.2d 841] for the rule that such an implied covenant is enforceable.

In *Matzen* an established radiologist contracted with a younger doctor to maintain his large and profitable practice while the established doctor was absent in military service. The employed doctor was bound by the terms of the agree-

ment to maintain and preserve the absent doctor's practice. In that case, the court found that the younger doctor, upon learning of the older man's imminent return, did not use his best efforts to maintain and preserve the practice that had been entrusted to him, but on the contrary, made every effort to direct the practice to a new office established by him. His efforts included solicitation of referring doctors, appointing patients to visit him at his new location, and also the sending of announcements to all patients of his employer. The court properly held such conduct actionable. But our case is unlike *Matzen.* Here two dentists have terminated their assocation after practicing side by side, each with his own group of patients, whose records were separately kept, and who were generally treated by one of the doctors exclusively. On the evidence the trial judge has found respondent's patients were his "patients of record" and that respondent was not an employee of appellant. On these findings the court has properly concluded that respondent was entitled to copies of the records of his own patients, and that he did not violate his agreement or cause appellant any damage when he left after notice and later invited his patients to continue to patronize him. These conclusions are reasonable and fully supported by the evidence. Their validity is further supported by the attitude of most of respondent's patients who were solicited by both appellant and respondent after the termination of their association. Almost all of respondent's patients continued their treatment and care with him, obviously regarding him, and not appellant, as their dentist.

For the same reasons, appellant's final contention, that respondent's conduct constituted unfair competition, is without merit. It is based upon the assumption that all patients were his, and that none were "patients of record" of Dr. Cox. But, as we have seen, the court found otherwise, and substantial evidence supports the court's findings.

The judgment is affirmed.

Draper, P. J., concurred.