[Civ. No. 31043.   Second Dist., Div. Two.   Apr. 18, 1968.]

R. FLEMING JONES, Plaintiff, Cross-defendant, and Appellant, v. HELEN E. FAKEHANY, as Executrix, etc., Defendant, Cross-complainant and Respondent.

Walter H. Young for Plaintiff and Appellant.

Morgan, Wenzel, Lynberg & Morris and Landon Morris for Defendant and Respondent.

HERNDON, J.—Plaintiff appeals from a preliminary injunction granted February 25, 1966, as amended by a minute order dated March 10, 1966. For the purpose of indicating the procedural and factual setting in which the challenged orders were made, a brief summary of the record will suffice.

For a period of approximately 25 years prior to his death on November 24, 1965, Dr. George E. Fakehany had conducted a medical practice at 738 North Highland Avenue, Los Angeles, California, under the name Highland Medical Clinic. During this period the license to operate under this fictitious name and the lease upon the premises occupied by the clinic were held solely in the name of Dr. Fakehany, who also was the owner of the clinic's furnishings and equipment.

In April of 1961, plaintiff and appellant, Dr. R. Fleming Jones, became a member of the clinic's staff and during the ensuing period of approximately 4½ years he rendered services therein as a medical doctor. By way of compensation he received 15 percent of the clinic's gross income. In his complaint (seeking dissolution of an alleged partnership and other relief) appellant has alleged that in addition to this direct remuneration, he was entitled to receive under an oral partnership agreement an additional 10 percent of the receipts. He claims that this additional sum was to be retained by Dr. Fakehany, but credited against the $50,000 purchase price of an equal partnership interest in the clinic.

By her answer respondent has denied that any such oral agreement was ever made and asserts that throughout his association with the clinic, appellant was an employee of Dr. Fakehany receiving as his full compensation the agreed 15 percent of the gross income. By her cross-complaint respondent seeks injunctive relief and damages by reason of appellant's alleged unfair competition and his wrongful interference with the estate's intended sale of the clinic's assets and good will.

For a relatively brief period following Dr. Fakehany's death, the clinic continued to operate under an undefined arrangement with appellant attending to patients during the day and a Dr. Sol Rieber and a first aid man handling the two

night shifts. Dr. Rieber had been an employee of Dr. Fakehany for approximately one year before his death and received 10 percent of the gross income of the clinic in return for his services.

On January 3, 1966, appellant commenced this action against respondent, who is Dr. Fakehany's widow and the executrix of his will. Appellant's pleading is denominated "Complaint for Dissolution of Partnership, Sale and Liquidation of Assets, and for Injunction." On the next day following service of a copy of this complaint upon her, respondent directed the following letter to appellant:

"As Executrix of the Estate of George E. Fakehany, M.D., I am charged with the preservation of all assets of said estate.

"You are hereby notified that your conduct has been detrimental to the preservation of the Estate of George E. Fakehany, M.D., and pursuant to my duties as Executrix, you are hereby notified that you are terminated forthwith from your employment with the Highland Medical Clinic."

On January 5, 1966, appellant responded by sending the following letter to Mrs. Fakehany, who had worked as a nurse in her husband's clinic:

"I, as the sole surviving partner of the Partnership between myself and deceased George E. Fakehany, M.D., operating under the fictitious name of 'Highland Medical Clinic', terminate your services at the Highland Medical Clinic, effective immediately.

"Demand is made upon you to remove yourself from the premises of the Highland Medical Clinic at 738 No. Highland, forthwith."

Thereafter, the parties engaged in a series of skirmishes, which we need not describe in detail, in their continuing battle for possession of the clinic's premises and its records and for the patronage of its clientele. Apparently by means of literally living in the offices, appellant gained physical control of the clinic and its operations. All other personnel of the clinic either left or were discharged, and appellant, with the aid of close friends, operated it until January 21, 1966, when a hearing was held on the applications for preliminary injunctions filed by both parties. This hearing resulted in the following order:

"It is HEREBY ORDERED as follows:

"(1) That the plaintiff and cross-defendant R. Fleming Jones, M.D., his agents, servants, employees, and all persons acting under, in concert with or for them, forthwith remove

themselves from the premises at 738 North Highland Avenue, Los Angeles, California, and remain away therefrom;

"(2) That the defendant, Helen E. Fakehany, her attorneys, and the agents, employees and anyone else acting by, through, or under them, or either of them, are hereby enjoined and restrained from interfering with any patients seeking medical attention from plaintiff and cross-defendant R. Fleming Jones, M.D., and/or interfering with, harassing, preventing or annoying him in the care and treatment of his patients."

This relatively general order failed to produce an effective truce. On the very morning the order was made, and apparently upon appellant's instructions, the persons who had been assisting him in the operation of the clinic removed therefrom *inter alia* (1) the "Physician's Daily Reference Book" which would have disclosed the identity of the persons treated during the period appellant had been in exclusive possession; (2) a receipt book entitled "Highland Medical Clinic" which should have contained a statement of funds received during the period; and (3) all current patient records and all patient records for the years 1964 and 1965. The latter records, in addition to the name, address and telephone number of each patient, contain the patient's medical history, record of treatment given, and dates of each visit. They are the only records of the clinic containing such information. In addition, appellant took with him all of the moneys which had been collected by the clinic during the period he was in possession following Dr. Fakehany's death.

Very shortly thereafter appellant sent to the patients of the clinic postcards reading as follows: "Due to the death of Dr. Fakehany, the Highland Medical Clinic is being sold. Dr. Jones will continue your treatment at his new offices at 1540 No. Highland Avenue, Hollywood 28. The phone number is HO. 56526. Office hours are from 8 a.m. to 10 p.m. Thank You."

Upon affidavits alleging these latter actions of appellant, respondent sought further injunctive relief. Dr. Jones, in opposition thereto, filed his declaration alleging that he had returned all books and records theretofore removed from the premises except the medical records of approximately one hundred persons. He alleged that these records were in his own handwriting; that he had cared for these patients since the death of Dr. Fakehany on November 24, 1965; that he was their doctor and they were his patients and that he was

entitled to retain such records. Eighty-six of these persons signed a statement reading: "We, the undersigned patients of Dr. R. F. Jones, M.D., do not wish to have our medical records sent to the Highland Medical Clinic or anywhere else. We are ordering Dr. Jones to retain our records in his possession." Appellant also attached to his declaration a copy of the following letter which respondent had addressed to those persons whom he asserted were his patients:

"We understand you received a postcard from Dr. Jones within the last few weeks telling you the Highland Medical Clinic is being sold due to the death of Dr. Fakehany. In that postcard, Dr. Jones said he would continue your treatment at another address.

"We think you are entitled to know that Dr. Jones was discharged from his employment at the Highland Medical Clinic on January 5, 1966. He refused to leave the premises and it was necessary to get a Court order to force him to leave. When he did leave, he took your medical records with him which we are now in the process of having returned to us through Court action.

"There has been no interruption in the services of the Highland Medical Clinic and you can return for treatment anytime you desire. In this event, we will see that your medical records are made available."

Following a hearing, the trial court on February 25, 1966, made the following order:

"1. That plaintiff and cross-defendant R. Fleming Jones, M.D., forthwith return and restore to defendant and cross-complainant HELEN E. FAKEHANY, at No. 738 No. Highland Avenue, Los Angeles, California, all patient records, patient record cards, Physician's Daily Reference Book, and any other papers, files or documents which he removed, or caused to be removed from the Highland Medical Clinic, at No. 738 North Highland Avenue, Los Angeles, California.

"The hereinabove phrase 'all patient records, patient record cards' includes the records of all patients who, at any time in the past, came to the Highland Medical Clinic, No. 738 North Highland Avenue, Los Angeles, California, including those who were seen, examined and treated by plaintiff and cross-defendant and includes those patients who have been seen, examined and treated by said plaintiff and cross-defendant subsequent to January 21, 1966, since he left the said clinic, who were up to said date seen, examined and treated at said clinic, this order being that said plaintiff and cross-

defendant is to return and restore to defendant and cross-complainant all the aforementioned papers, files and documents, without exception.

"2. That plaintiff and cross-defendant R. FLEMING JONES, M.D., within ten (10) days from the date of this order, return and restore to defendant and cross-complainant, at No. 738 North Highland Avenue, Los Angeles, California, all moneys received by him, or by his agents, servants and employees, or hereafter received by him, his agents, servants and employees, for services rendered to patients who were seen, examined and treated at the Highland Medical Clinic, including those seen, examined and treated by plaintiff and cross-defendant up to and including January 21, 1966, and return and restore to said defendant and cross-complainant all moneys received by him, or by his agents, servants and employees, or hereafter received by him, his agents, servants and employees, for services rendered to said patients subsequent to January 21, 1966.

"3. That plaintiff and cross-defendant R. Fleming Jones, M.D., his agents, servants, employees, and all persons acting under, in concert with, or for them, refrain and desist from seeing, examining and treating any patient who was seen examined and treated at the Highland Medical Clinic, No. 738 North Highland Avenue, Los Angeles, California, up to and including January 21, 1966; that said plaintiff and cross-defendant, his agents, servants, employees, and all persons acting under, in concert with, or for them, refrain and desist from soliciting the patronage of said patients, this order being that any patient, whether or not solicited by said plaintiff and cross-defendant, his agents, servants and employees, who came to the Highland Medical Clinic, No. 738 North Highland Avenue, Los Angeles, California, at any time in the past, including those patients seen, examined and treated by plaintiff and cross-defendant, shall not be, and plaintiff and cross-defendant, his agents, servants, employees and all persons acting under, in concert with, or for them, are hereby restrained and enjoined from seeing, examining and treating such patients.

"That plaintiff and cross-defendant, his agents, servants, employees, and all persons acting under, in concert with, or for them, refrain and desist from interfering with, in any manner, the medical practice and clinic conducted at No. 738 North Highland Avenue, Los Angeles, California, and the patients thereof."

On March 10, 1966, the court denied appellant's request to

## 304

vacate this order but modified it in part. To paragraph 2 thereof was added the proviso that "in lieu of returning said monies to the defendant, plaintiff may deposit, on or before March 15, 1966, such funds in United California Bank, on Santa Monica Blvd. near Highland Ave., and there be impounded pending outcome of this litigation." The injunction against treating patients who had formerly been patients of the Highland Medical Clinic was modified to exclude "patients who are relatives of the plaintiff." Appellant states his assignments of error as follows:

"The error in the preliminary injunction is in the following particulars: (1) It was error to enjoin Dr. Jones from at any time in the future seeing or treating anyone who had ever in the past been a patient of the Highland Medical Clinic. (2) It was error to order Dr. Jones to turn over to Mrs. Fakehany fees which he collected from patients for treatment and services that he gave to them between January 5th, the date of his alleged discharge, and January 21, 1966, the date of the order for him to vacate the clinic. (3) It was error to order Dr. Jones to return to the Highland Medical Clinic the records of the 86 patients that he was treating."

We have concluded that the order under review must be reversed insofar as it (1) enjoins appellant from treating patients who desire to obtain or continue his services; (2) requires that appellant return to the respondent the medical records of such patients; and (3) requires that he pay over or impound his fees received from such patients for services rendered after January 21, 1966. The order should be affirmed insofar as it requires appellant (1) to return all other books and records to respondent; and (2) to pay into an impound account to await an accounting at the time of trial all moneys received by him during the period of January 5, 1966 to January 21, 1966.

We have not considered and do not pass upon the propriety of those other portions of the order not challenged by appellant on this appeal. In addition, in view of the limited record before us, consisting largely of written declarations relating to the conduct of the parties, we deem it inadvisable for this court at this juncture to undertake the formulation of final answers to all of the abstract contentions urged in support of, and in opposition to, the pretrial injunction presently under review. The resolution of these questions may properly await a plenary trial of the issues presented by the respective pleadings of the parties filed in this action.

The medical profession, like the legal profession, "stands in a peculiar relation to the public and the relationship existing between the members of the profession and those who seek its services cannot be likened to the relationship of a merchant to his customer. [Citation.]" (*Lyon* v. *Lyon*, 246 Cal.App.2d 519, 524 [54 Cal.Rptr. 829].) "The practice of medicine should not be commercialized nor treated as a commodity in trade." (Opinions and Reports of the Judicial Council of the American Medical Association. 1966 Ed., p. 25.) "Since the practice of medicine is a profession and not a business, the practices adopted by businesses are not necessarily suitable." (*Id.*, p. 45.)

Most important among the many features distinguishing the practice of medicine from other commercial enterprises is the extremely dependent and trusting role assumed by the patient. Very often he is unable fully to understand the nature of his ailment even after the diagnosis has been made and explained to the fullest extent that explanation is desirable or helpful. His faith and confidence in the individual who prescribes treatment to alleviate his condition are often as greatly contributive to his recovery as the medications or therapy prescribed.

The patient may not properly be regarded as the subject of "ownership" and his right to seek and obtain treatment from a licensed physician of his own choice may not be denied him in order to protect the "property rights" of any competing physician or clinic. When it is found that the patient's chosen physician, in his role as a businessman, has dealt unfairly with another, injunctive relief may properly enjoin any continuance of the unfair competition and damages may be awarded to compensate for any injury inflicted by the wrongful conduct of the offending practitioner. (Cf. *Matzen* v. *Horwitz*, 102 Cal.App.2d 884, 893 [228 P.2d 841].) However, the injunctive order must not be so drawn as to impinge upon the paramount right of the patient to obtain the services of the physician of his choice.

The record supports the trial court's conclusion that appellant acted wrongfully in removing from the clinic the described records and in taking into his possession the moneys which had been collected at the clinic prior to January 21, 1966. Since appellant stipulates that for the purposes of this proceeding we should regard his status as that of a former employee of the deceased owner of the clinic, his taking possession of these records and funds cannot be justified on

the basis of any claim that he was a surviving partner.

However, the adequate protection of the rights and interests of the patients who have elected to seek his professional services requires that he be allowed to retain such of the medical records of these patients as may be found necessary in order to enable him to render them proper care and treatment.[1] Finally, we find no tenable basis for those provisions of the injunction which require appellant to deposit in the impounded fund fees collected by him subsequent to his departure from the premises of the clinic.

The cause is remanded to the trial court with directions to modify the provisions of the preliminary injunction to the extent required by this opinion and to such further extent as may be found reasonable and proper due to any change in circumstances. Each party will bear the costs incurred by him in connection with this appeal.

Roth, P. J., and Fleming, J., concurred.

---

[1]Cf. Opinions and Reports of the Judicial Council of the American Medical Association, 1966 Edition, page 57 et seq.